The Honorable Michelle L. Peterson

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT TACOMA**

| | |
|---|---|
| MAKENZIE and ERIC ZUERN, on behalf of themselves and all others similarly situated,<br><br>    Plaintiffs,<br><br>  vs.<br><br>IDS PROPERTY CASUALTY INSURANCE COMPANY; AMERIPRISE INS. CO.; and AMERIPRISE AUTO & HOME INS.,<br><br>    Defendants. | Civil Action No.: 3:19-cv-06235-MLP<br><br>**DEFENDANTS' MOTION TO DISMISS**<br><br><br>NOTE ON MOTION CALENDAR:  February 14, 2020<br><br>ORAL ARGUMENT REQUESTED |

DEFENDANTS' MOTION TO DISMISS
CASE:  3:19-CV-06235-MLP

253348193

SIDLEY AUSTIN LLP
1420 FIFTH AVE., SUITE 1400
SEATTLE, WA 98101
415.439.1799

# <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ............................................................................................................ 1

II.     FACTUAL ALLEGATIONS .......................................................................................... 2

III.    ARGUMENT .................................................................................................................. 4

        A.      IDS Did Not Breach The Policy or Washington Law ............................................ 5

                1.      Plaintiffs Do Not Allege That IDS Paid Them Less Than The Actual
                        Cash Value Of Their Car. ......................................................................... 5

                2.      Subsection 391's Mandate That Insurers Adjust For Options, Mileage,
                        And Condition Does Not Prohibit Consideration Of Other Factors In
                        Determining Fair Market Value. ................................................................ 6

                3.      IDS' Estimates Are Based On "Verifiable" Dollar Amounts. .................... 9

        B.      Counts I-III Also Fail Because Plaintiffs Have Not Alleged The Facts
                Required To Show They Were Damaged By The Alleged Use Of "Non-
                Verifiable" Data. ................................................................................................ 10

        C.      Plaintiffs' Claims Against The Ameriprise Insurance Company and
                Ameriprise Auto and Home Insurance Fail Because Plaintiffs Allege No
                Cognizable Facts About These Defendants. ......................................................... 11

IV.     CONCLUSION ............................................................................................................. 12

DEFENDANTS' MOTION TO DISMISS
CASE:  3:19-cv-06235-MLP

253348193

i

SIDLEY AUSTIN LLP
1420 FIFTH AVE., SUITE 1400
SEATTLE, WA 98101
415.439.1799

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)...................................................................................................10

*Bayview Hunters Point Community Advocates v. Metro. Transp. Comm'n*,
    366 F.3d 692 (9th Cir. 2004) .......................................................................................8

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)...................................................................................................10

*DC Farms, LLC v. Conagra Foods Lamb Weston, Inc.*,
    179 Wn. App. 205 (2014) ..........................................................................................10

*DePhelps v. Safeco Ins. Co. of Am.*,
    116 Wn. App. 441 (2003) .............................................................................................5

*Dombrosky v. Farmers Ins. Co.*,
    84 Wn. App. 245 (1996) ...............................................................................................9

*Duncan v. Walker*,
    533 U.S. 167 (2001).....................................................................................................8

*Girard v. Myers*,
    39 Wn. App. 577 (1985) .............................................................................................10

*Gosney v. Fireman's Fund Ins. Co.*,
    3 Wn. App. 2d 828, 861 (2018) ...................................................................................4

*Gossett v. Farmers Ins. Co.*,
    133 Wn. 2d 954 (1997) .................................................................................................9

*Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*,
    105 Wn. 2d 778,784 (1986) .............................................................................4, 5, 10

*Jacob's Meadow Owners Ass'n v. Plateau 44 II, LLC*,
    139 Wn. App. 743 (2007) ..........................................................................................10

*Judd v. American Tel. and Tel. Co.*,
    152 Wn. 2d 195 (2004) .................................................................................................8

*Keller v. Allstate Ins. Co.*,
    81 Wn. App. 624 (1996) ...............................................................................................4

*Lehrer v. DSHS*,
    101 Wn. App. 509 (2000)..............................................................................................4

DEFENDANTS' MOTION TO DISMISS
CASE:  3:19-CV-06235-MLP

253348193

ii

SIDLEY AUSTIN LLP
1420 FIFTH AVE., SUITE 1400
SEATTLE, WA 98101
415.439.1799

*Masterson v. Cty. of Alameda*,
No. 19-cv-01625, 2019 U.S. Dist. LEXIS 121883 (N.D. Cal. July 22, 2019) ......................12

*Nat'l Union Fire Ins. Co. v. Zillow, Inc.*,
No. C16-1461, 2017 U.S. Dist. LEXIS 57496 (W.D. Wash. Apr. 13, 2017)........................12

*Perrin v. United States*,
444 U.S. 37 (1979)...................................................................................................................9

*Petramala v. Connelley*,
No. CV-18-03000, 2019 U.S Dist. LEXIS 73518 (D. Ariz. May 1, 2019) ...........................12

*Premera v. Kreidler*,
133 Wn. App. 23 (2006) ..........................................................................................................5

*Reichl v. State Farm Mut. Auto. Ins. Co.*,
75 Wn. App. 452 (1994) ........................................................................................................11

*Rivard v. State*,
168 Wn. 2d 775 (2010) ............................................................................................................8

*SafeWorks, LLC v. Teupen Am., LLC*,
717 F. Supp. 2d 1181 (W.D. Wash. 2010)..............................................................................11

*Swartz v. KPMG LLP*,
476 F.3d 756 (9th Cir. 2007) ...................................................................................................2

*Whatcom County v. City of Bellingham*,
128 Wn. 2d 537 (1996) ............................................................................................................8

*Yith v. Nielsen*,
881 F.3d 1155 (9th Cir. 2018) .................................................................................................9

**Other Authorities**

Federal Rule of Civil Procedure Rule 8(a)(2)...........................................................................12

https://en.oxforddictionaries.com/definition/verifiable ...............................................................9

WAC 284-30-320.....................................................................................................................5, 7

WAC 284-30-391................................................................................................ *passim*

DEFENDANTS' MOTION TO DISMISS
CASE: 3:19-cv-06235-MLP

253348193

iii

SIDLEY AUSTIN LLP
1420 FIFTH AVE., SUITE 1400
SEATTLE, WA 98101
415.439.1799

## I.      INTRODUCTION

In 2017, plaintiff Makenzie Zuern was involved in an automobile accident, and the car she owns with her husband, Eric Zuern, was declared a total loss.  When a covered vehicle is declared a total loss, Washington law requires insurers to provide insureds with either (a) a payment in the amount of the actual cash value of the vehicle; or (b) a comparable replacement vehicle. Washington law expressly defines the "actual cash value" of a vehicle as its "fair market value" immediately before the accident.  Plaintiffs have not alleged and cannot allege that their insurer, IDS Property Casualty Insurance Company ("IDS") breached its duty to pay them the actual cash/fair market value of their vehicle.

To the contrary, plaintiffs do not dispute that IDS promptly offered to settle their claim by issuing a payment for the actual cash/fair market value of their vehicle, plus applicable taxes and fees.  Nor is it disputed that plaintiffs accepted IDS' offer without reservation, or that IDS promptly paid them the agreed-upon amount.

Nevertheless, plaintiffs have asserted claims under the Washington Consumer Protection Act ("CPA") and for breach of contract, alleging that IDS should have reimbursed them based on the "advertised price" of comparable vehicles rather than on the fair market value of their own vehicle. That claim has no factual or legal foundation.  In the automobile industry, the advertised price is virtually always greater than a vehicle's sales price.   Plaintiffs do not challenge this market reality. They contend instead that Washington law prohibits insurers from taking the steps needed to determine the prices actually paid by willing buyers to willing sellers.  But that position cannot be squared with the law any more than it can be reconciled with market reality.  Washington law explicitly mandates that insurers provide the owners of a totaled vehicle with payment corresponding to the vehicle's actual cash/fair market value – and no more.

In arguing to the contrary, Plaintiffs rely exclusively on Section 284-30-391 of the Washington Administrative Code.  Plaintiffs claim that when an insurer calculates the fair market value of an insured vehicle by reference to comparable vehicles, a subsection of this regulation limits the market adjustments an insurer can make, permitting the insurer to consider the features, mileage, and condition of the vehicles at issue but prohibiting the insurer from considering any other

Defendants' Motion to Dismiss
Case:  3:19-cv-06235-MLP

Sidley Austin LLP
1420 Fifth Ave., Suite 1400
Seattle, WA 98101
415.439.1799

1

253348193

1    information.

2         Plaintiffs misread the regulation.  Washington law does not in fact prohibit insurers from

3    considering factors other than features, mileage, and condition when valuing vehicles.  Indeed,

4    insurers are *expected* to consider a variety of other facts – most obviously vehicle age – when

5    calculating actual cash/fair market value.  Both the regulatory text and the policies of Washington

6    insurance law make clear that parties must be able to consider *all* relevant factors in determining the

7    actual cash/fair market value of a vehicle.

8         Plaintiffs also claim that IDS violated the requirement in the same regulatory provision that

9    an insurer's methodology be "verifiable."  But Plaintiffs fail to plead any facts supporting this claim.

10   Plaintiffs themselves allege that IDS used a third-party auto valuation vendor to value their car, and

11   that the vendor disclosed that "[i]n the case of this 2014 Nissan Rogue [plaintiffs' car], the

12   difference between the asking price and the selling price is generally 6%."  (Exhibit B at 5.)[1]

13   Plaintiffs state in conclusory fashion that this figure is "not verifiable," but plead no facts showing

14   this to be the case.  Under applicable pleading standards, these allegations are plainly deficient.

15        Plaintiffs' claims also fail because plaintiffs plead no facts showing that they were *damaged*

16   by the alleged breach of contract and violation of the CPA.  IDS' sole payment obligation was to

17   reimburse plaintiffs for the fair market value of their car, and plaintiffs do not contend that the

18   payment they received was less than fair market value.  Because plaintiffs have established neither

19   breach nor damages as to any of their claims, the Court should dismiss the complaint in its entirety.

20   **II.    FACTUAL ALLEGATIONS**

21        From March 29, 2017 until September 29, 2017, plaintiffs were insured under an automobile

22   insurance policy issued by IDS (the "Policy").  (Ex. A.)[2] On August 4, 2017, plaintiffs' 2014 Nissan

23   Rogue S was damaged in an accident.  (Compl. ¶ 22.)  Shortly thereafter, plaintiffs submitted an

---

[1]  "Ex. _" citations in this brief refer to the exhibits to the Declaration of Christopher Assise in Support of Defendants'
Motion to Dismiss.  Because plaintiffs refer in their complaint to these documents or to the transactions they
memorialize,  the Court may consider the documents in ruling on this motion. *Swartz v. KPMG LLP,* 476 F.3d 756, 763
(9th Cir. 2007) ("[A] court may consider a writing referenced in a complaint but not explicitly incorporated therein if the
complaint relies on the document and its authenticity is unquestioned.").

[2]  For the purposes of this motion only, IDS accepts as true this and other facts alleged in the complaint.

Defendants' Motion to Dismiss                                                    Sidley Austin LLP
Case:  3:19-cv-06235-MLP                                                          1420 Fifth Ave., Suite 1400
                                                                                 Seattle, WA 98101
                                                                                 415.439.1799

253348193

2

insurance claim to IDS, which the company promptly investigated.  (*Id.*)  IDS determined that plaintiffs' vehicle was a "total loss" under the Policy, a conclusion plaintiffs do not dispute.  (*Id.*)  In language tracking the applicable regulation, IDS had agreed under the Policy that in the event of a covered accident, it would pay plaintiffs up to "the lesser of":

> (a) the *actual cash value* of the stolen or damaged property; or
>
> (b) the amount necessary to repair or replace the property with property of like kind and quality.

(Ex. A at 6) (emphasis added); WAC 284-30-391(2).  Under this provision, if the amount necessary to repair a damaged vehicle is greater than its "actual cash value," the insured receives an amount equal to the "actual cash value" of the vehicle.  Under no circumstances is IDS obligated to reimburse plaintiffs for an amount *greater than* the "actual cash value" of the vehicle.[3]

Within days of plaintiffs' accident, IDS offered to pay them $19,224.47 for their vehicle. (Ex. C.)  On August 21, 2017, plaintiffs informed IDS "we are accepting the offer of $19,224.47 for our 2014 Nissan Rogue" and instructed IDS to "proceed with submitting the payment."  (*Id.*) Plaintiffs do not dispute that IDS immediately paid the agreed-upon amount according to their instructions.

IDS' valuation of plaintiffs' vehicle was based on a report prepared by Autosource, a third party vendor (the "Report").  (Compl. ¶ 25; Ex. B.)  In the Report, the vendor calculated a "Vehicle Base Price" for plaintiffs' vehicle by looking at the prices of five comparable vehicles (the same make and model) that "ha[d] been recently offered for sale in the market place."  (Ex. B at 5-7.) After identifying the comparable vehicles, the vendor adjusted their advertised prices to account for differences between features of those vehicles and the features of a typical 2014 Nissan Rogue.  (*Id.*) In order to determine the actual cash value of the comparable vehicles, the vendor also calculated the "typical negotiation" adjustment – that is, the typical "difference between the asking price and

---

[3] Plaintiffs have named three defendants in this lawsuit:  IDS, Ameriprise Insurance Company and Ameriprise Auto and Home Insurance.  Plaintiffs allege no facts showing that the latter two defendants had any obligations under the Policy. These two defendants did not issue the Policy, and the complaint contains no allegations showing that plaintiffs had any other dealings with them.  We address the defects in plaintiffs' claims against these entities in the final section of this motion and otherwise confine the discussion to plaintiffs' claims against IDS.

DEFENDANTS' MOTION TO DISMISS
CASE:  3:19-cv-06235-MLP

253348193

3

SIDLEY AUSTIN LLP
1420 FIFTH AVE., SUITE 1400
SEATTLE, WA 98101
415.439.1799

1   selling price" of a 2014 Nissan Rogue.  (*Id.*)  Here, that difference was 6 percent.  (Ex. B at 5.)

2   Taking these various market factors into account, IDS determined that the "Vehicle Base Price" for

3   plaintiffs' car was $17,471.  (*Id.* at 4.)  This price was then increased to account for the fact that

4   plaintiffs' vehicle had a feature (a "Rear Bumper Protector") not typically included on a standard

5   2014 Nissan Rogue.  (*Id.* at 4.)  This increase produced a vehicle value of $17,511.  (Compl. ¶ 25.)

6   After adding taxes and fees, IDS offered to reimburse plaintiffs $19,224 for their damaged vehicle.

7   (Ex. C.)  As noted, plaintiffs told IDS that they were "accepting the offer of $19,224.47 for [their]

8   2014 Nissan Rogue."  (Ex. C.)  Plaintiffs do not dispute that, after they communicated their

9   acceptance, IDS issued payment to them in the amount of $19,224.

10  **III.   ARGUMENT**

11          Plaintiffs' claims fail for multiple reasons.  Plaintiffs allege claims for breach of contract

12  (Count I), breach of the duty of good faith (Count II), violation of the CPA (Count III), and further

13  seek "a declaration that" defendants "violat[ed] Washington law and the insurance contract" (Count

14  IV).  To state a claim on any of these counts, plaintiffs must allege facts that, if true, demonstrate

15  that IDS breached the terms of plaintiffs' insurance policy or of Washington insurance law.  *Lehrer*

16  *v. DSHS*, 101 Wn. App. 509, 516 (2000) ("a plaintiff in a contract action must prove a valid contract

17  between the parties, breach, and resulting damage"); *Keller v. Allstate Ins. Co.*, 81 Wn. App. 624,

18  632 (1996) (to establish a breach of the duty of good faith, "a party must prove that the defendant

19  acted unlawfully and in violation of public policy"); *Hangman Ridge Training Stables, Inc. v. Safeco*

20  *Title Ins. Co.*, 105 Wn. 2d 778,784 (1986) (to prevail on a CPA claim, a plaintiff must establish,

21  *inter alia*, the existence of an "unfair or deceptive act or practice"); Compl. ¶ 55 (seeking a

22  declaration that IDS violated "Washington law and the insurance contract").  But plaintiffs'

23  allegations of breach are not supported by – indeed, they are contradicted by – the provisions of the

24  Washington Administrative Code on which plaintiffs rely.

25          Plaintiffs also fail to plead facts that, if true, would establish damages.  This too is fatal to

26  their claims for breach of contract, breach of the duty of good faith and fair dealing, and under the

27  CPA.  *Lehrer*, 101 Wn. App. at 516 ("a plaintiff in a contract action must prove a valid contract

28  between the parties, breach, and *resulting damage*") (emphasis added); *Gosney v. Fireman's Fund*

DEFENDANTS' MOTION TO DISMISS
CASE:  3:19-CV-06235-MLP

SIDLEY AUSTIN LLP
1420 FIFTH AVE., SUITE 1400
SEATTLE, WA 98101
415.439.1799

4

253348193

1   *Ins. Co.*, 3 Wn. App. 2d 828, 861 (2018) ("harm is an essential element of the tort of bad faith" by an

2   insurer); *Hangman Ridge*, 105 Wn. 2d at 785 (a CPA plaintiff must plead "injury . . . in his or her

3   business or property…").

### A.   IDS Did Not Breach The Policy or Washington Law.

5        Plaintiffs' claims turn exclusively on an incorrect reading of WAC 284-30-391 ("Subsection

6   391"). Plaintiffs argue that Subsection 391 requires insurers to treat advertised prices as if they were

7   final sales prices when determining the actual cash value of a vehicle. But Subsection 391

8   emphatically does not require this. The key textual term in the regulation – "actual cash value" – is,

9   critically, defined as a vehicle's *fair market value* before the accident. WAC 284-30-320 ("'Actual

10  cash value' means the fair market value of the loss vehicle immediately prior to the loss").[4]

11       Subsection 391 provides an insurer with various options in determining fair market value,

12  one of which is to collect data on comparable "motor vehicles advertised for sale." But the

13  regulation does *not* direct the insurer simply to use the advertised price of those vehicles in

14  determining the fair market value of the insured vehicle. Instead, the regulation mandates that

15  insurers determine the "actual cash value" – that is, the fair market value – of the comparable

16  vehicles themselves. WAC 284-30-391(2)(b)(iii). This is the case whether or not the insurer uses a

17  computerized source (such as the Report) to determine value. WAC 284-30-391(2)(b)(iv).

18  Plaintiffs' claims cannot be reconciled with this regulatory scheme.

### 1.   Plaintiffs Do Not Allege That IDS Paid Them Less Than The Actual Cash Value Of Their Car.

20       Subsection 391 and WAC 284-30-320 together make fair market value the sole measure for

21  valuing the vehicle at issue in this lawsuit. Fair market value in turn is defined as "that which an

22  informed buyer would willingly pay and an informed seller would accept." *DePhelps v. Safeco Ins.

23  Co. of Am.*, 116 Wn. App. 441, 453 (2003) (citing *State v. Rowley*, 74 Wn. 2d 328, 334 (1968)); *see

24  also, e.g.*, *Premera v. Kreidler*, 133 Wn. App. 23, 45 n.12 (2006) ("[f]air market value is what a

25  willing buyer not under duress is willing to pay a willing seller also not under duress when both have

---

[4] For the convenience of the Court, we have attached a copy of the critical regulations – WAC 284-30-320 and WAC 284-30-391 – as an appendix to this motion.

DEFENDANTS' MOTION TO DISMISS
CASE: 3:19-cv-06235-MLP

SIDLEY AUSTIN LLP
1420 FIFTH AVE., SUITE 1400
SEATTLE, WA 98101
415.439.1799

5

253348193

adequate information") (citing *Coast to Coast Stores, Inc. v. Gruschus*, 100 Wn. 2d 147, 163 (1983)).  Critically, plaintiffs do not assert that, as a factual matter, the advertised price of a comparable automobile represents the fair market value of either that vehicle or their own.  Nor could they.  Outside of a limited number of "haggle free" car dealerships, automobile prices are virtually always negotiated, with the "advertised price" serving as a dealer or private seller's opening offer.  Plaintiffs allege no facts about the fair market value of their vehicle in particular, and, again, do not contend that the amount they accepted from IDS represented less than its fair market value.  Because plaintiffs have pled no facts showing that IDS failed to reimburse them for the fair market value of their vehicle, they have failed to state a claim for breach of either the Policy or Subsection 391.

> ### 2.   Subsection 391's Mandate That Insurers Adjust For Options, Mileage, And Condition Does Not Prohibit Consideration Of Other Factors In Determining Fair Market Value.

In addition to setting out an insurer's obligations with respect to totaled vehicles, Subsection 391 provides the methods insurers may use to satisfy that obligation and the standards of practice insurers must follow in doing so.  Regarding methods, the regulation provides that insurers "must adjust and settle vehicle total losses" in one of three ways:  (1) replacing the vehicle; (2) offering a cash settlement for *the actual cash value* of the vehicle; or (3) having the vehicle appraised to determine its *actual cash value*.  WAC 284-30-391(1)-(3).  IDS chose the second method – a cash settlement.  Subsection 391 goes on to provide four ways in which insurers who make cash settlements may determine actual cash value of the insured vehicle.  WAC 284-30-391(2)(b)(i)-(iv).[5]  Plaintiffs do not dispute that IDS assessed their vehicle using one of those four permissible approaches.

Subsection 391 also articulates "standards of practice" insurers must follow.  WAC 284-30-391(4)-(6).  These standards include general rules of professionalism and fair play governing insurers in their dealings with insureds.  For example, when an insurer makes a settlement offer to an

---

[5] Those methods are (i) to determine the actual cash value of a single comparable motor vehicle; (ii) to obtain licensed dealer quotes; (iii) to determine the actual cash value of two or more comparable vehicles currently advertised for sale; or (iv) to use a computerized source to establish a "statistically valid actual cash value of the loss vehicle."  IDS elected the fourth method, with Autosource serving as the computerized source.

DEFENDANTS' MOTION TO DISMISS
CASE:  3:19-cv-06235-MLP

SIDLEY AUSTIN LLP
1420 FIFTH AVE., SUITE 1400
SEATTLE, WA 98101
415.439.1799

6

253348193

insured, the insurer must document this in a claim file and include detailed information about the way the offer was made.  WAC 284-30-391(4)(a).  Similarly, insurers must consider relevant information provided by the insured in the settlement process.  WAC 284-30-391(4)(c).  And insurers must provide insureds with documentation, and must make adjustments for tax liability an insured would have incurred if making a purchase on the open market.  WAC 284-30-391(d), (e).  The provision plaintiffs rely on is included in this category:  It requires insurers to "[b]ase all offers on itemized and verifiable dollar amounts for vehicles that are currently available. . . using appropriate deductions or additions for options, mileage or condition when determining comparability."  WAC 284-30-391(4)(b).

Plaintiffs' claim is based entirely on the contention that Subsection 391(4)(b), rather than setting out a general rule of insurer conduct, instead *trumps and replaces* the actual cash/fair market value standard expressly articulated in WAC 284-30-320 and used throughout Subsection 391.  According to plaintiffs, because WAC 284-30-391(4)(b) refers to "options, mileage or condition," it also *forecloses* insurers from considering any other factors when ascertaining a vehicle's actual cash/fair market value.  But that interpretation is entirely contrary to both the regulatory text and larger principles of Washington insurance law.

To begin, plaintiffs' reading is contradicted by the plain language of Subsection 391(4)(b).  Nothing in Section 391(4)(b) purports to *limit* the factors that insurers can consider in determining the actual cash/fair market value of a vehicle.  The regulation simply mandates that insurers not ignore differences in options, mileage and condition when determining the actual cash/fair market value of either an insured vehicle or comparable vehicles.

Moreover, interpreting Section 391(4)(b) to prohibit the consideration of factors other than options, mileage, and condition would place this provision in direct conflict with the remainder of Subsection 391.  As noted, Subsection 391(2) requires that any cash settlement of a total loss claim be "based on the actual cash value of a comparable motor vehicle" and Subsection 391(2)(b)(i) permits an insurer to use the "actual cash value of a comparable motor vehicle" as a means of calculating the actual cash value of the insured vehicle.  WAC 284-30-391(2)-(2)(b)(i).  Under these provisions, "actual cash value" means "fair market value," not "advertised price."  WAC 284-30-

DEFENDANTS' MOTION TO DISMISS
CASE:  3:19-cv-06235-MLP

253348193

7

SIDLEY AUSTIN LLP
1420 FIFTH AVE., SUITE 1400
SEATTLE, WA 98101
415.439.1799

320.  Reading those provisions together, plaintiffs' interpretation would lead to the result that "actual cash value" would mean one thing under 391(4)(b) – that is, "advertised price" – but something entirely different under all other parts of Subsection 391 and the insurance regulations generally – that is, fair market value.

Neither policy nor the regulatory text supports this bizarre result.  The fact that plaintiffs' interpretation of Section 391(4)(b) would prohibit insurers from performing the very fair market analysis that they are required to undertake under the same regulation is a sure sign that plaintiffs' interpretation is incorrect.  Courts routinely reject textual interpretations that produce such internally contradictory results.  *Bayview Hunters Point Community Advocates v. Metro. Transp. Comm'n*, 366 F.3d 692, 700 (9th Cir. 2004) ("A basic rule of statutory construction is that one provision should not be interpreted in a way which is internally contradictory or that renders other provisions of the same statute inconsistent or meaningless") (citation omitted); *Judd v. American Tel. and Tel. Co.,* 152 Wn. 2d 195, 203 (2004) (refusing to interpret a statutory provision in a way that would lead to a conflict within the statute, and noting that each provision must be viewed in relation to and in harmony with all other provisions).

In fact, Subsection 391 contains fourteen additional references to the payment or calculation of "actual cash value," including multiple provisions detailing the methods that insurers may use to calculate actual cash value/fair market value.  If plaintiffs' reading of Subsection 391(4)(b) were accepted, all of these references would be non-sequiturs, as only the advertised price of comparable vehicles adjusted for three specific criteria – and not a vehicle's actual cash value – would be relevant in determining an insurer's payment obligation.  Because interpretations that render provisions of the statute surplusage are also to be avoided, the Court should reject plaintiffs' interpretation.  *Duncan v. Walker,* 533 U.S. 167, 174 (2001) ("It is our duty to give effect, if possible, to every clause and word of a statute. We are thus reluctant to treat statutory terms as surplusage in any setting.") (internal citation omitted); *Rivard v. State*, 168 Wn. 2d 775, 783 (2010) ("[W]e interpret a statute to give effect to all language, so as to render no portion meaningless or superfluous."); *Whatcom County v. City of Bellingham*, 128 Wn. 2d 537, 546 (1996) ("Statutes must be interpreted and construed so that all the language used is given effect, with no portion rendered

DEFENDANTS' MOTION TO DISMISS
CASE:  3:19-cv-06235-MLP

SIDLEY AUSTIN LLP
1420 FIFTH AVE., SUITE 1400
SEATTLE, WA 98101
415.439.1799

8

253348193

1    meaningless or superfluous").[6]

2          Plaintiffs' attempt to read "actual cash value" – and the equivalent term "fair market value" –

3    out of the regulation also conflicts with Washington public policy limiting insurance to

4    reimbursement for actual losses.  The Washington Supreme Court has explained that "[u]nder the

5    indemnity principle of insurance, an insured receives only that amount that will indemnify actual

6    loss, not an additional windfall above this amount." *Dombrosky v. Farmers Ins. Co.*, 84 Wn. App.

7    245, 259 n.4 (1996).   Consequently, "[a] fundamental principle of insurance law is that

8    opportunities for net gain to an insured through the receipt of insurance proceeds exceeding a loss

9    should be regarded as inimical to the public interest." *Gossett v. Farmers Ins. Co.*, 133 Wn. 2d 954,

10   968 (1997).   Paying plaintiffs an amount based on advertised prices that are indisputably higher than

11   actual cash value/fair market value would be contrary to both the regulations and the public policy of

12   Washington.

13                   **3.       IDS' Estimates Are Based On "Verifiable" Dollar Amounts.**

14         Plaintiffs' argument that the "typical negotiation" adjustment is not "verifiable" is also

15   contrary to law and unsupported by any facts plaintiffs allege.  (*See* Compl. ¶¶ 1, 3, 21.)   Because

16   the term "verifiable" is not defined in the regulation, it is afforded its ordinary plain language

17   meaning. *Perrin v. United States*, 444 U.S. 37, 42 (1979) ("A fundamental canon of statutory

18   construction is that, *unless otherwise defined,* words will be interpreted as taking their ordinary,

19   contemporary, common meaning.") (emphasis added); *Yith v. Nielsen,* 881 F.3d 1155, 1165 (9th Cir.

20   2018) (citing *Perrin* and noting that when determining the plain meaning of language, courts may

21   consult dictionary definitions).   "Verifiable" means "[a]ble to be checked or demonstrated to be true,

22   accurate, or justified."  https://en.oxforddictionaries.com/definition/verifiable.  To establish that IDS'

23   typical negotiation adjustment is not "verifiable," plaintiffs would have to plead facts demonstrating

24   that it is not possible to check or prove the accuracy of IDS' 6 percent figure.

25

26   ---
     [6] IDS is aware that one state court has allowed breach of contract (but not CPA) claims to proceed past a motion to
     dismiss on a theory comparable to that plaintiffs advance here.  *Steinore v. Mut. of Enumclaw Ins. Co.*, Pierce Co. Sup.
27   Ct. Case No. 17-2-10884-2; *Tereshchenko v. Am. Family Mut. Ins. Co.*, Pierce Co. Sup. Ct. Case No. 19-2-07123-6.
     2019.  These unpublished slip opinions contain no written analysis, have not been cited by any other court, and
28   accordingly have no persuasive value.

DEFENDANTS' MOTION TO DISMISS
CASE:  3:19-cv-06235-MLP

SIDLEY AUSTIN LLP
1420 FIFTH AVE., SUITE 1400
SEATTLE, WA 98101
415.439.1799

9

253348193

Plaintiffs have not done so.  Plaintiffs do not contend, for example, that the negotiation adjustment calculated by Autosource is based on fictitious data.  Nor have plaintiffs alleged that the reduction cannot be objectively calculated using actual sales data.  (Ex. B at 5-7.)  Plaintiffs neither allege nor explain why IDS' typical negotiation adjustment cannot be checked for accuracy.  Plaintiffs merely offer the legal conclusion that IDS' "typical negotiation" adjustment is not "verifiable" as that term is used in the regulation.  (Compl. ¶¶ 1, 3, 21.)[7]  Such legal conclusions are insufficient as a pleading matter.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (a plaintiff must provide "more than labels and conclusions" to state a cause of action); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (allegations that are "mere conclusory statements, do not suffice" to state a claim).

*        *        *        *        *

Because plaintiffs have alleged no fact demonstrating that IDS failed to reimburse their claim at fair market value or calculated the fair market value of their claim in an unverifiable manner, plaintiffs have failed to plead that IDS breached any obligation under the Policy or Washington law.  The Court should dismiss the complaint on this basis alone.

### B.     Counts I-III Also Fail Because Plaintiffs Have Not Alleged The Facts Required To Show They Were Damaged By The Alleged Use Of "Non-Verifiable" Data.

Even if plaintiffs could establish a breach based on the process IDS followed to value plaintiffs' insurance claim, their claim in this Court would fail because they have not pled and cannot plead facts plausibly alleging that they were injured by the alleged breach.  "[I]n suits for damages only . . .  a court may dismiss a breach of contract action if damages have not been suffered."  *Jacob's Meadow Owners Ass'n v. Plateau 44 II, LLC*, 139 Wn. App. 743, 754 (2007); *DC Farms, LLC v. Conagra Foods Lamb Weston, Inc.*, 179 Wn. App. 205, 227 (2014) ("[m]ere proof that there was a breach of contract without more will not support a verdict in favor of a plaintiff, even for nominal damages"); *Girard v. Myers*, 39 Wn. App. 577, 589 (1985) ("The

---

[7] IDS and its vendor calculated the typical negotiation adjustment by comparing the list price of recently sold vehicles in a given geographic area to the sale price of those same vehicles.  Because the process is purely mathematical, it is by definition verifiable.

DEFENDANTS' MOTION TO DISMISS
CASE:  3:19-cv-06235-MLP

253348193

SIDLEY AUSTIN LLP
1420 FIFTH AVE., SUITE 1400
SEATTLE, WA 98101
415.439.1799

10

1   Consumer Protection Act . . . does not provide a remedy for a person who fails to prove actual

2   damages"); *Hangman Ridge Training Stables, Inc.*, 105 Wn. 2d at 785 (to establish a claim under the

3   CPA, a plaintiff must establish "injury to plaintiff in his or her business or property").  Where

4   plaintiffs seek only money damages but fail to plead facts showing that they incurred such damages,

5   courts routinely dismiss their claims.  *E.g.*, *SafeWorks, LLC v. Teupen Am., LLC*, 717 F. Supp. 2d

6   1181, 1193 (W.D. Wash. 2010) ("[a] breach of contract claim may be dismissed when there is no

7   evidence of damages caused by the breach").

8          Plaintiffs do not dispute that, within days of their claim, IDS offered them $19,224 as the

9   value of their totaled vehicle.  (Ex. C.)  Nor do plaintiffs allege that the fair market value of their

10  vehicle before the accident was greater than $19,224.  This is dispositive.  Under Washington law, in

11  a case where plaintiffs seek benefits allegedly due under an insurance contract, "the applicable

12  measure of damagers is the benefit of the bargain rule."  *Reichl v. State Farm Mut. Auto. Ins. Co.*, 75

13  Wn. App. 452, 455 (1994).  The parties bargained for IDS to pay plaintiffs the fair market value of

14  their vehicle before the accident.  (Ex. A at p. 6.)  Plaintiffs have not alleged that IDS paid less than

15  the fair market value of their vehicle.

16         In the face of this incontrovertible fact, plaintiffs' claim appears to be that IDS may be held

17  liable for purported noncompliance with the process allegedly required by Subsection 391.  But

18  under the law cited above, there is no claim for breach in the abstract.  Instead, plaintiffs must plead

19  facts sufficient to establish that the amount they received was less than the amount they would have

20  received under all permissible processes of valuing their vehicle.  Plaintiffs do not even try to do so,

21  and have consequently failed to allege damages.

22      **C.**    **Plaintiffs' Claims Against The Ameriprise Insurance Company and Ameriprise**

23             **Auto and Home Insurance Fail Because Plaintiffs Allege No Cognizable Facts About These Defendants.**

24         Finally, plaintiffs' claims against Ameriprise Insurance Company and Ameriprise Auto and

25  Home Insurance fail because plaintiffs have not alleged that they had any dealings with these

26  defendants.  Plaintiffs' allegations concern the actions of only one entity – IDS, which issued their

27  insurance policy.  (Ex. A at 1.)

28

DEFENDANTS' MOTION TO DISMISS
CASE:  3:19-cv-06235-MLP

SIDLEY AUSTIN LLP
1420 FIFTH AVE., SUITE 1400
SEATTLE, WA 98101
415.439.1799

11

253348193

In what appears to be an effort to obscure this fact, plaintiffs avoid identifying their insurer by name:  They direct their allegations against "Ameriprise," a term they create to refer collectively to all three defendants.  (*See, e.g.* Compl. ¶¶ 1-4, 14, 17-21, 23-25, 35-44, 47-57.)  But this does not enable plaintiffs to state a claim against Ameriprise Insurance Company or Ameriprise Home and Auto Insurance.  "[A] plaintiff suing multiple defendants must allege the basis of his claim against each defendant to satisfy Federal Rule of Civil Procedure Rule 8(a)(2)."  *Nat'l Union Fire Ins. Co. v. Zillow, Inc.*, No. C16-1461, 2017 U.S. Dist. LEXIS 57496, at *9 (W.D. Wash. Apr. 13, 2017); *see also Masterson v. Cty. of Alameda*, No. 19-cv-01625, 2019 U.S. Dist. LEXIS 121883, at *9 (N.D. Cal. July 22, 2019) ("[c]ourts in the Ninth Circuit consistently conclude that undifferentiated pleading against multiple defendants is improper") (internal quotation omitted); *Petramala v. Connelley*, No. CV-18-03000, 2019 U.S Dist. LEXIS 73518, at *3 (D. Ariz. May 1, 2019) (complaint is "deficient because . . . it repeatedly lumps together all of the defendants as a collective whole – 'Defendants' – without specifically alleging the role that each defendant played in causing Plaintiff's alleged injury") (collecting authorities).  The application of this rule is particularly clear in this case, where plaintiffs' factual allegations show that only one entity – the entity that issued the single policy at issue – has any connection to their claim.   (Compl. ¶¶ 14, 23, 35, 40.)  The policy itself, which is properly before the Court, confirms that this entity was IDS, not Ameriprise Insurance Company or Ameriprise Auto and Home Insurance.  (Ex. A at 1.)

## IV.    CONCLUSION

For the foregoing reasons, the Court should dismiss plaintiffs' complaint and this action with prejudice.

Dated: January 21, 2020                         Respectfully submitted,


                                                */s/ Robin Wechkin*

                                                Robin E. Wechkin WSBA No. 24746
                                                SIDLEY AUSTIN LLP
                                                1420 Fifth Avenue, Suite 1400
                                                Seattle, WA 98101
                                                Telephone:  (415) 391-1799
                                                rwechkin@sidley.com

                                                Theodore R. Scarborough

DEFENDANTS' MOTION TO DISMISS
CASE:  3:19-cv-06235-MLP

253348193

12

SIDLEY AUSTIN LLP
1420 FIFTH AVE., SUITE 1400
SEATTLE, WA 98101
415.439.1799

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

(*pro hac vice* application forthcoming)
Christopher M. Assise
(*pro hac vice* application forthcoming)
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, Illinois 60603
Telephone:  (312) 853-2236

*Attorneys for Defendants IDS Property Casualty
Insurance Company, Ameriprise Insurance
Company, and Ameriprise Auto & Home Insurance*

DEFENDANTS' MOTION TO DISMISS
CASE:  3:19-CV-06235-MLP

SIDLEY AUSTIN LLP
1420 FIFTH AVE., SUITE 1400
SEATTLE, WA 98101
415.439.1799

13

253348193

1

## CERTIFICATE OF SERVICE

2

I hereby certify that on January 21, 2020, the document attached hereto was presented to the

3

Clerk of the Court for the United States District Court for the Western District of Washington for

4

filing and uploading to the CM/ECF system.  In accordance with their ECF registration agreement

and the Court's rules, the Clerk of the Court will send e-mail notification of such filing to:

5

6

Deborah M. Nelson
Jeffrey D. Boyd

7

Nelson Boyd, PLLC
411 University Street, Suite 1200

8

Seattle, Washington 98101
nelson@nelsonboydlaw.com

9

boyd@nelsonboydlaw.com

10

Hank Bates
Tiffany Oldham

11

519 W. 7th Street
Little Rock, Arkansas 72201

12

hbates@cbplaw.com

13

toldham@cbplaw.com

14

DATED this 21st day of January, 2020

15

16

17

By:  */s/ Christopher M. Assise*
Christopher M. Assise

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' MOTION TO DISMISS
CASE:  3:19-cv-06235-MLP

SIDLEY AUSTIN LLP
1420 FIFTH AVE., SUITE 1400
SEATTLE, WA 98101
415.439.1799

14

253348193

# APPENDIX

## *WAC § 284-30-391*

This file includes all rules adopted and filed through the 19-23 Washington State Register (WSR), December 4, 2019

*WA - Washington Administrative Code  >  TITLE 284. INSURANCE COMMISSIONER, OFFICE OF  > CHAPTER 30. TRADE PRACTICES  >  THE UNFAIR CLAIMS SETTLEMENT PRACTICES REGULATION*

# WAC 284-30-391. Methods and standards of practice for settlement of total loss vehicle claims.

Unless an agreed value is reached, the insurer must adjust and settle vehicle total losses using the methods set forth in subsections (1) through (3) of this section. Subsections (4) through (6) of this section establish standards of practice for the settlement of total loss vehicle claims. If an agreed value or methodology is reached between the claimant and the insurer using an evaluation that varies from the methods described in subsections (1) through (3) of this section, the agreement must be documented in the claim file. The insurer must take reasonable steps to ensure that the agreed value is accurate and representative of the actual cash value of a comparable motor vehicle in the principally garaged area.

**(1)**Replacing the loss vehicle: The insurer may settle a total loss claim by offering to replace the loss vehicle with a comparable motor vehicle that is available for inspection within a reasonable distance from where the loss vehicle is principally garaged.

**(2)**Cash settlement: The insurer may settle a total loss claim by offering a cash settlement based on the actual cash value of a comparable motor vehicle, less any applicable deductible provided for in the policy.

**(a)**Only a vehicle identified as a comparable motor vehicle may be used to determine the actual cash value.

**(b)**The insurer must determine the actual cash value of the loss vehicle by using any one or more of the following methods:

**(i)**Comparable motor vehicle: The actual cash value of a comparable motor vehicle based on current data obtained in the area where the loss vehicle is principally garaged.

**(ii)**Licensed dealer quotes: Quotations for the cost of a comparable motor vehicle obtained from two or more licensed dealers within a reasonable distance of the principally garaged area not to exceed one hundred fifty miles (except where there are no licensed dealers having comparable motor vehicles within one hundred fifty miles).

**(iii)**Advertised data comparison: The actual cash value of two or more comparable motor vehicles advertised for sale in the local media if the advertisements meet the definition of current data as defined in *WAC 284-30-320(4)*. The vehicles must be located within a reasonable distance of the principally garaged area not to exceed one hundred fifty miles.

**(iv)**Computerized source: The insurer may use a computerized source to establish a statistically valid actual cash value of the loss vehicle. The source used must meet all of the following cri teria:

**(A)**The source's data base must produce values for at least eighty-five percent of all makes and models for a minimum of fifteen years taking into account the values of all major options for such motor vehicles.

**(B)**The source must produce actual cash values based on current data within a reasonable distance of the principally garaged area, not to exceed one hundred fifty miles.

WAC § 284-30-391

**(C)**The source must rely upon the actual cash value of comparable motor vehicles that are currently available or were available in the market place within ninety days prior to or after the date of loss.

**(D)**The source must provide a list of comparable motor vehicles used to determine the actual cash value. If more than thirty comparable motor vehicles are located, the insurer need list only thirty but may list more.

**(v)**Cash settlement search area: If none of the methods in subsection (2)(b)(i) through (iv) of this section produce a comparable motor vehicle to establish an actual cash value within a reasonable distance of the principally garaged area, the search area may be expanded in increasing circles of twenty-five mile increments, up to one hundred and fifty miles, until two or more comparable motor vehicles are located. If no comparable motor vehicles can be located within one hundred fifty miles, the search area may be expanded with the agreement of the first party claimant.

**(3)**Appraisal: If the first party claimant and the insurer fail to agree on the actual cash value of the loss vehicle and the insurance policy has an appraisal provision, either the insurer or the first party claimant may invoke the appraisal provision of the policy to resolve disputes concerning the actual cash value.

**(4)**Settlement requirements: When settling a total loss vehicle claim using methods in subsections (1) through (3) of this section, the insurer must:

**(a)**Communicate its settlement offer to the claimant by phone or in writing and information about this communication must be documented in the claim file, including the date, time, and name of the person to whom the offer was made.

**(b)**Base all offers on itemized and verifiable dollar amounts for vehicles that are currently available, or were available within ninety days of the date of loss, using appropriate deductions or additions for options, mileage or condition when determining comparability.

**(c)**Consider relevant information supplied by the claimant when determining appropriate deductions or additions.

**(d)**Provide a true and accurate copy of any "valuation report," as described in *WAC 284-30-392*, if requested.

**(e)**A s part of the settlement amount, include all applicable government taxes and fees that would have been incurred by the claimant if the claimant had purchased the loss vehicle immediately prior to the loss. These taxes and fees must be included in the settlement amount whether or not the claimant retains or subsequently transfers ownership of the loss vehicle.

**(5)**Settlement adjustments: Insurers may adjust a total loss settlement through the following methods only:

**(a)**The insurer may deduct from a first party claim the amount of another claim payment (including the applicable deductible) previously made to an insured for prior unrepaired damage to the same vehicle.

**(b)**Deductions other than those made pursuant to (a) of this subsection may be made for other unrepaired damage as long as the amount of deduction is no greater than the decrease in the actual cash value due to prior damage.

**(c)**If the claimant retains the total loss vehicle, the insurer may deduct the salvage value from the settlement amount, as described in subsection (4)(e) of this section. Upon a request by the claimant, the insurer must provide the name and address of a salvage entity or dismantler who will purchase the salvage for the amount deducted with no additional charge. This purchase option must remain available for at least thirty days after the settlement agreement is reached and the claimant must be advised that the salvage entity may not honor its offer if the condition of the salvage has changed.

**(d)**Any additions or deductions from the actual cash value must be explained to the claimant and must be itemized showing specific dollar amounts.

**(6)**Reopening a claim file:

CHRISTOPHER ASSISE

WAC § 284-30-391

**(a)**The insurer must reopen the claim file if within the first thirty-five days after the date final payment is sent to the first party claimant, lienholder, or both, the claimant is not able to purchase a comparable motor vehicle for the agreed amount but was able to locate, but did not purchase a comparable motor vehicle that costs more than the agreed settlement amount.

**(b)**If the claimant has satisfied (a) of this subsection, and if the appraisal section of the policy has not been utilized, the insurer must do one of the following:

**(i)**Locate a comparable motor vehicle that is currently available for the agreed settlement amount;

**(ii)**Pay the claimant the difference between the agreed settlement amount and the cost of the comparable motor vehicle;

**(iii)**Purchase the comparable motor vehicle for the claimant; or

**(iv)**Conclude the loss settlement in the manner provided in the appraisal section of the insurance policy in force at the time of the loss.

**(c)**The insurer is not required to reopen the claim file if:

**(i)**The claimant received written notification of the location of a specific comparable motor vehicle available for purchase for the agreed settlement amount and the claimant did not purchase this vehicle within five business days after the date final payment is sent to the claimant, lienholder, or both; or

**(ii)**The appraisal provision was previously exercised.

# History

Statutory Authority: *RCW 48.02.060* and *48.30.010*. 09-11-129 (Matter No. R 2008-07), § 284-30-391, filed 5/20/09, effective 8/21/09.

Washington Administrative Code
Copyright 2020by The State of Washington and Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved

**End of Document**

CHRISTOPHER ASSISE

*WAC § 284-30-320*

This file includes all rules adopted and filed through the 19-23 Washington State Register (WSR), December 4, 2019

*WA - Washington Administrative Code  >  TITLE 284. INSURANCE COMMISSIONER, OFFICE OF  >  CHAPTER 30. TRADE PRACTICES  >  THE UNFAIR CLAIMS SETTLEMENT PRACTICES REGULATION*

# WAC 284-30-320. Definitions.

When used in this regulation, *WAC 284-30-300* through *284-30-400*:

**(1)** "Actual cash value" means the fair market value of the loss vehicle immediately prior to the loss.

**(2)** "Claimant" means, depending upon the circumstance, either a first party claimant, a third party claimant, or both and includes a claimant's designated legal representative and a member of the claimant's immediate family designated by the claimant.

**(3)** "Comparable motor vehicle" means a vehicle that is the same make and model, of the same or newer model year, similar body style, with similar options and mileage as the loss vehicle and in similar overall condition, as established by current data. To achieve comparability, deductions or additions for options, mileage or condition may be made if they are itemized and appropriate in dollar amount.

**(4)** "Current data" means data within ninety days prior to or after the date of loss.

**(5)** "File" means a record in any retrievable format, and unless otherwise specified, includes paper and electronic formats.

**(6)** "First party claimant" means an individual, corporation, association, partnership or other legal entity asserting a right as a covered person to payment under an insurance policy or insurance contract arising out of the occurrence of the contingency or loss covered by a policy or contract.

**(7)** "Insurance policy" or "insurance contract" mean any contract of insurance, indemnity, suretyship, or annuity issued, proposed for issuance, or intended for issuance by any insurer.

**(8)** "Insurer" means any individual, corporation, association, partnership, reciprocal exchange, interinsurer, Lloyds insurer, fraternal mutual insurer, fraternal mutual life insurer, and any other legal entity engaged in the business of insurance, authorized or licensed to issue or who issues any insurance policy or insurance contract in this state. "Insurer" does not include health care service contractors, as defined in *RCW 48.44.010*, and health maintenance organizations, as defined in *RCW 48.46.020*.

**(9)** "Investigation" means all activities of the insurer directly or indirectly related to the determination of liabilities under coverages afforded by an insurance policy or insurance contract.

**(10)** "Loss vehicle" means the damaged motor vehicle or a motor vehicle that the insurer determines is a "total loss."

**(11)** "Motor vehicle" means any vehicle subject to registration under chapter 46.16 RCW.

**(12)** "Notification of claim" means any notification, whether in writing or other means acceptable under the terms of an insurance policy or insurance contract, to the insurer or its agent, by a claimant, which reasonably apprises the insurer of the facts pertinent to a claim.

**(13)** "Principally garaged area" means the place where the loss vehicle is normally kept, consistent with the applicable policy of insurance.

WAC § 284-30-320

**(14)** "Third party claimant" means any individual, corporation, association, partnership or other legal entity asserting a claim against any individual, corporation, association, partnership or other legal entity insured under an insurance policy or insurance contract of the insurer.

**(15)** "Total loss" means that the insurer has determined that the cost of parts and labor, plus the salvage value, meets or exceeds, or is likely to meet or exceed, the "actual cash value" of the loss vehicle. Other factors may be considered in reaching the total loss determination, such as the existence of a biohazard or a death in the vehicle resulting from the loss.

**(16)** "Written" or "in writing" means any retrievable method of recording an agreement or document, and, unless otherwise specified, includes paper and electronic formats.

# History

Statutory Authority: *RCW 48.02.060* and *48.30.010*. 09-11-129 (Matter No. R 2008-07), § 284-30-320, filed 5/20/09, effective 8/21/09; 78-08-082 (Order R 78-3), § 284-30-320, filed 7/27/78, effective 9/1/78.

Washington Administrative Code
Copyright 2020by The State of Washington and Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved

**End of Document**

CHRISTOPHER ASSISE