The Honorable Michelle L. Peterson

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT TACOMA**

| | |
|---|---|
| MAKENZIE and ERIC ZUERN, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>IDS PROPERTY CASUALTY INSURANCE COMPANY; AMERIPRISE INS. CO.; and AMERIPRISE AUTO & HOME INS.,<br><br>Defendants. | Civil Action No.: 3:19-cv-06235-MLP<br><br>**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**<br><br>NOTE ON MOTION CALENDAR: February 21, 2020<br><br>ORAL ARGUMENT REQUESTED |

REPLY IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS
CASE: 3:19-CV-06235-MLP

SIDLEY AUSTIN LLP
1420 FIFTH AVE., SUITE 1400
SEATTLE, WA 98101
415.439.1799

# **TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................................................ 1

II. ARGUMENT ....................................................................................................................... 2

    A. IDS Did Not Breach The Policy Or Washington Law. ............................................ 2

        1. Washington Law Permits Insurers To Make All Adjustments Necessary To Ascertain A Vehicle's Fair Market Value. ............................ 2

        2. IDS' Deductions Are Verifiable. ................................................................ 5

        3. IDS Itemized Its Adjustments. ................................................................... 7

    B. Plaintiffs Fail To Plead Damages. ............................................................................ 7

    C. Plaintiffs Fail To Plead A Claim Against Ameriprise Insurance Company Or Ameriprise Auto And Home Insurance. .................................................................. 8

III. CONCLUSION .................................................................................................................... 9

REPLY IN SUPPORT OF DEFENDANTS'  
MOTION TO DISMISS  
CASE: 3:19-CV-06235-MLP  

SIDLEY AUSTIN LLP  
1420 FIFTH AVE., SUITE 1400  
SEATTLE, WA 98101

i

# **TABLE OF AUTHORITIES**

**Page(s)**

**Decisions**

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ................................................................................................................ 8

*Dombrosky v. Farmers Ins. Co.*,
   84 Wn. App. 245 (1996) ........................................................................................................ 5

*Durant v. State Farm Mut. Auto. Ins. Co.*,
   191 Wn. 2d 1 (2018) (Opp. ) ............................................................................................. 3, 4

*Gossett v. Farmers Ins. Co.*,
   133 Wn. 2d 954 (1997) .......................................................................................................... 5

*Lehrer v. DSHS*,
   101 Wn. App. 509 (2000) ...................................................................................................... 8

*Lundquist v. First Nat'l Ins. Co. of Am.*,
   No. 18-5301, 2018 WL 2949470 (W.D. Wash. June 13, 2018) ......................................... 5, 6

*Lundquist v. First Nat'l Ins. Co. of Am.*,
   No. 18-5301, 2018 WL 3344791 (W.D. Wash. July 9, 2018) ............................................... 6

**Regulations**

WAC 284-30-320 ......................................................................................................................... 1-3

WAC 284-30-391 ........................................................................................................................ *passim*

WAC 284-30-395 ........................................................................................................................... 3

**Other**

Arthur R. Miller, *From Conley to Twombly to Iqbal: A Double Play on the Federal
   Rules of Civil Procedure*, 60 Duke L.J. 1 (2010) .................................................................. 8

REPLY IN SUPPORT OF DEFENDANTS'                                                SIDLEY AUSTIN LLP
MOTION TO DISMISS                                                              1420 FIFTH AVE., SUITE 1400
CASE: 3:19-CV-06235-MLP                                                        SEATTLE, WA 98101

ii

## I. INTRODUCTION

This case turns on the application of two Washington insurance regulations, WAC 284-30-320 (Subsection 320) and WAC 284-30-391 (Subsection 391). Subsection 391 requires insurers to compensate insureds for the "actual cash value" of totaled vehicles. Subsection 320 defines "actual cash value" as "fair market value." IDS moved to dismiss because plaintiffs have not alleged and cannot allege that IDS breached its duty to provide them with the fair market value of their vehicle. In response, plaintiffs simply refuse to discuss fair market value. Neither the term nor the concept appears in their opposition brief. That is fatal.

Rather than grappling with the critical regulatory definition, plaintiffs repeatedly argue that Subsection 391(4)(b) instructs insurers calculating actual cash value to consider "only [the] options, mileage, or condition" of comparable vehicles. But Subsection 391(b)(4) does not include the word "only." The provision does not purport to set forth an exhaustive list of factors for insurers to consider in determining actual cash value, and it certainly does not purport to trump the key regulatory principle that insurers are to compensate insureds for the fair market value – neither more nor less – of their vehicles. Plaintiffs have accordingly failed to state a claim based on IDS' alleged failure to pay the actual cash value of their car.

Plaintiffs' second theory of liability – that IDS breached its duty under Subsection 391(b)(4) to base offers on "itemized and verifiable dollar amounts" – is equally defective as a matter of law. Consistent with Subsection 391, IDS provided plaintiffs with a valuation report containing detailed financial information itemizing each discount and upward adjustment it made in determining the actual cash value of their vehicle; this included dollar figures corresponding to the typical negotiation adjustment applied to five comparable vehicles. Plaintiffs suggest that IDS was required to go beyond this and to provide the raw data from which the typical negotiation adjustment was derived, but they cite no authority supporting that proposition. As significantly, plaintiffs fail to plead facts showing that they suffered damages in connection with the purportedly missing data. Critically, again, plaintiffs do not contend that IDS paid them less than the fair market value of their vehicle – which is all they are entitled to under their insurance policy and Washington law.

Finally, as to the two defendants other than IDS – Ameriprise Insurance Company and

Ameriprise Home and Auto Insurance – plaintiffs argue that a cover letter authenticating the insurance policy "indicates a common authorship" of that contract as to all three defendants. Plaintiffs are wrong. The insurance policy on which their claims depend is clear on its face: The only contracting party is IDS. And while plaintiffs note that the three entities have certain connections with one another, they cite no legal principle – corporate veil-piercing, respondeat superior or anything else – that makes the three liable for one another's contractual obligations or alleged torts on the basis of those connections. Plaintiffs have not pled a claim against any defendant in this case.

## II.   ARGUMENT

### A.   IDS Did Not Breach The Policy Or Washington Law.

#### 1.   Washington Law Permits Insurers To Make All Adjustments Necessary To Ascertain A Vehicle's Fair Market Value.

Plaintiffs contend that IDS' use of a typical negotiation adjustment to determine the actual cash value of comparable vehicles is "inappropriate" and "unauthorized" under Subsection 391(4)(b). IDS showed in its opening brief that this claim cannot be reconciled with the language of Subsections 391 and 320. These provisions require insurers to compensate insureds in an amount equal to the fair market value of total-loss vehicles. WAC 284-30-391(2) ("[t]he insurer may settle a total loss claim by offering a cash settlement based on the actual cash value of a comparable motor vehicle"); WAC 284-30-320 ("'[a]ctual cash value' means the fair market value of the loss vehicle immediately prior to the loss"). Fair market value, in turn, means the amount a willing buyer would pay a willing seller. (Mot. at 5 (citing authorities).) The price actually paid by a buyer – and not the advertised or offering price posted by a seller – is therefore the touchstone.

Plaintiffs respond that IDS has "misconstrued" their allegations, and that their claim is consistent with Subsection 391 because they do not dispute that insurers may adjust for options, mileage, or conditions. Opp. at 7. But there is no misconstruction here. Plaintiffs' position is that insurers may make adjustments *only* for options, mileage and conditions. Opp. at 1-2. IDS' position is that Washington's insurance regulations require insurers to determine a vehicle's fair market value, and that to do so, insurers and third-party valuation vendors will often need to look at factors

REPLY IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS
CASE: 3:19-CV-06235-MLP

2

SIDLEY AUSTIN LLP
1420 FIFTH AVE., SUITE 1400
SEATTLE, WA 98101

*beyond* options, mileage and condition.  (Mot. at 5-9.)  The issue on IDS' motion to dismiss is whether plaintiffs' or IDS' position is consistent with the regulatory text.

Plaintiffs, as noted largely ignore the text.  Plaintiffs correctly observe that "actual cash value" is not defined in the insurance policy and hence must be interpreted in accordance with the regulatory text – but then entirely fail to address Subsection 320, which explicitly defines the term.  (Opp. at 7.)  Subsection 320 is dispositive:  In determining the actual cash value of a comparable vehicle, insurers must ascertain how much a willing buyer would have paid a willing seller for that vehicle.  Plaintiffs similarly fail to address defendants' other textual arguments, which show (1) that Subsection 391(b)(4) does not on its face limit insurers to considering options, mileage and condition, and (2) that any such limitation would lead to a situation in which "actual cash value" would have different meanings in different provisions of Subsection 391.  (Mot. at 7-9.)

Rather than dealing with the applicable regulatory framework, plaintiffs repeatedly state that Subsection 391 "expressly provide[s] that to achieve comparability, insurers must *only make* deductions or additions for options, mileage, or condition."  (*E.g.*, Opp. at 2 (emphasis added).)  But the word "only" does not appear in Subsection 391(4)(b).  By contrast, other provisions of the insurance regulations – including provisions within Subsection 391 – do use the word "only" when the intent is to denote an exhaustive list.  *E.g.* 284-30-391(5) (mandating that insurers must adjust a total loss settlement "through the following methods *only*") (emphasis added); WAC 284-30-395(1) (enumerating the bases for denying a claim under Personal Injury Protection coverage and specifying that "[t]hese are the *only* grounds for denial, limitation, or termination") (emphasis added).  These provisions make clear that the drafters of the insurance regulations understood how to make a list of factors exhaustive, and that they did this explicitly where they intended to do so.  The drafters did not do so in Subsection 391(4)(b).

For the same reason, plaintiffs' argument finds no support in the Washington Supreme Court's decision in *Durant v. State Farm Mut. Auto. Ins. Co.*, 191 Wn. 2d 1 (2018) (Opp. at 6-7). Indeed, *Durant* shows by way of contrast why plaintiffs' regulatory argument in this case is wrong. The regulatory provision at issue in *Durant* was 284-30-395(1); as noted, this provision both enumerates the factors an insurer may consider in denying a Personal Injury Protection claim and

REPLY IN SUPPORT OF DEFENDANTS'  
MOTION TO DISMISS  
CASE:  3:19-CV-06235-MLP

SIDLEY AUSTIN LLP  
1420 FIFTH AVE., SUITE 1400  
SEATTLE, WA 98101

3

specifically provides that these factors "*are the only grounds for denial*" of such a claim. 191 Wn. 2d at 403-04 (emphasis in original). Based on that provision, the Supreme Court held that the insurer was not entitled to limit coverage based on factors beyond those enumerated in the regulation. *Id.* at 406-07. Subsection 391(4)(b), by contrast, contains no such limiting language.

In arguing that the list of options, mileage and conditions is exclusive, plaintiffs also overlook the limited function of that list within Subsection 391(4)(b). Subsection 391(4)(b) directs insurers to consider these three factors "when determining comparability." WAC 284-30-391(4)(b). The typical negotiation is not used to determine how two vehicles compare to one another. Insurers use the typical negotiation adjustment to determine the fair market value of the comparable vehicles *before* comparing those vehicles to the insured vehicle.[1]

Plaintiffs also seek to invoke broader policy considerations, arguing that if insurers were permitted to consider typical negotiation adjustments, this would give them "unfettered" or "unbridled" license "to enlist any deduction they wanted." (Opp. at 1, 6.) This is plainly untrue. The WAC provisions governing total-loss vehicles mandate that insurers must pay – and insureds are entitled to receive – amounts corresponding to the fair market value of the insured vehicle. *Supra* at 2. Any deduction that does not align with fair market value would accordingly be impermissible. An insurer's authority to consider factors other than options, mileage and condition therefore *is* "fettered" – it is clearly bounded by the concept of fair market value. Critically, again, plaintiffs do not address that concept. They do not dispute that adjusting for negotiation discounts is part of a fair market value determination. Nor do they allege that the amount they accepted for their particular vehicle was anything less than its fair market value. Their inability to make any such allegation belies their argument that IDS is advocating an "unbridled" right to reduce the value of totaled vehicles based solely on an insurer's whim.

---

[1] To value an automobile, two data points are needed: the selling price for a comparable automobile and the dollar value of the differences between that comparable vehicle and the vehicle being valued. Because the selling prices of individual automobiles are not readily available, the typical negotiation adjustment is used to derive an estimate of the selling price (or fair market value) of the comparable vehicle. Once the selling price of the comparable vehicle has been established, the insurer or vendor is then able to compare the vehicle being valued to the comparable vehicle by accounting for differences between the two in options, mileage and condition. Subsection 391(4)(b) by its plain language regulates the latter part of the analysis – comparing the two vehicles as to options, mileage and condition – but does not preclude insurers from performing the former part of the analysis – deriving the sale price of the comparable vehicle.

REPLY IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS
CASE: 3:19-cv-06235-MLP

SIDLEY AUSTIN LLP
1420 FIFTH AVE., SUITE 1400
SEATTLE, WA 98101

4

Finally, IDS explained in its opening brief that the outcome plaintiffs seek – in which insureds would be paid more than the fair market value of their vehicles – would be inconsistent with overarching principles of Washington insurance law.  (Mot. at 9.)  Under Washington's indemnity principle, insureds are entitled only to the amount of their losses, and not to additional windfalls.  *Dombrosky v. Farmers Ins. Co.*, 84 Wn. App. 245, 259 n.4 (1996)).  Any other result would be "inimical to the public interest."  *Gossett v. Farmers Ins. Co.*, 133 Wn. 2d 954, 968 (1997).  Plaintiffs ignore this argument too.  But this general policy, like the specifically-applicable regulatory text, is fatal to their claim.  Plaintiffs have not alleged facts showing that IDS breached the insurance policy or any other legal duty by applying a negotiation adjustment in determining the actual cash value of comparable vehicles.

### 2. IDS' Deductions Are Verifiable.

Plaintiffs' second theory of liability is that by applying a typical negotiation discount, IDS breached its obligation to base its offer on "verifiable" amounts.  IDS showed in its opening brief that this theory fails because plaintiffs cite no facts in support of their conclusory allegation that the typical negotiation adjustment is not "verifiable."  The Autosource report IDS provided to plaintiffs in offering to settle their claim showed that the vendor applied a 6 percent typical negotiation adjustment to each of five comparable vehicles in order to determine their fair market value.  (Dkt. No. 16-3 at 5-7.)  The term "verifiable" means capable of being checked for accuracy, and plaintiffs have alleged no facts suggesting that the vendor's 6 percent calculations are based on fictitious data or cannot be checked for accuracy.  (Mot. at 9-10.)

Plaintiffs respond that the question of whether the typical negotiation adjustment is verifiable is a factual issue unsuitable for resolution on a motion to dismiss.  But the issue here is that plaintiffs have pled *no* facts demonstrating that the challenged adjustment is unverifiable:  While plaintiffs contend that IDS' motion raises a "factual dispute," they fail to identify any such dispute.  Plaintiffs' citation to *Lundquist v. First Nat'l Ins. Co. of Am.,* No. 18-5301, 2018 WL 2949470 (W.D. Wash. June 13, 2018), does not establish a factual dispute either.  In *Lundquist*, Judge Bryan employed a definition of "verifiable" nearly identical to the definition IDS cited in its opening brief.  *Id.* at *4 (a figure is "verifiable" if it is "capable of being established as accurate"); (Mot. at 9 ("'verifiable'

REPLY IN SUPPORT OF DEFENDANTS'  
MOTION TO DISMISS  
CASE:  3:19-CV-06235-MLP

SIDLEY AUSTIN LLP  
1420 FIFTH AVE., SUITE 1400  
SEATTLE, WA 98101

5

means '[a]ble to be checked or demonstrated to be true, accurate or justified'")). Plaintiffs, again, cite no facts showing that Autosource's 6 percent calculations cannot be checked.[2]

Plaintiffs go on to suggest that IDS should have included the raw data underlying the 6 percent figure. But *Lundquist* does not require that either. The insurer in that case had adjusted three vehicles for comparability by applying an identical adjustment to each and refusing to provide any basis for that adjustment. 2018 WL 2949470, at *1. On these facts, the court held that the plaintiff had stated a claim under the "verifiable" requirement – together with the requirement in the same regulatory provision that deductions be "itemized" – because the insurer had made it impossible for the plaintiff to understand which factors, and in which amounts, were behind the blanket adjustment. *Id.* at *4 (noting that the term "'verifiable' would be rendered meaningless" without "disclosure of the amount" of the reduction). That is entirely distinct from the situation here, where the Autosource report lays out the amount and bases for all adjustments – both the adjustments made to account for difference in options, mileage and condition and the typical negotiation adjustment. (Dkt. No. 16-3 at 5-7.)

Plaintiffs cite nothing to support their claim that IDS was also required to provide the underlying raw data from which the 6 percent adjustment was derived. Furnishing such data –which could run to thousands of pages for every totaled vehicle – would be impracticable for insurers and burdensome to insureds. It is hardly surprising that plaintiffs are unable to find authority mandating a result that would hamper rather than facilitate meaningful disclosure from an insurer to an insured.

Finally, plaintiffs contend that the typical negotiation adjustment "is arbitrary and contrary to customary automobile dealer practices and inventory management." (Opposition at 8-9.) According to plaintiffs, list prices for used cars are typically "priced to market" and are thus equivalent to sales prices. *Id.* The Court should reject this argument. Plaintiffs cite no factual allegations in their complaint that support or even relate to it.

---

[2] The *Lundquist* order plaintiffs cite was vacated on June 13, 2018, the same day the order was issued. This appears on the face of the order. A month later, Judge Bryan issued a similar order with an additional discussion noting that the parties had declined to certify the issue to the Washington Supreme Court. *Lundquist v. First Nat'l Ins. Co. of Am.*, No. 18-5301, 2018 WL 3344791 (W.D. Wash. July 9, 2018). Plaintiffs' citation to a vacated decision is improper and creates unnecessary confusion and burden on the Court and counsel.

REPLY IN SUPPORT OF DEFENDANTS'  
MOTION TO DISMISS  
CASE: 3:19-CV-06235-MLP

SIDLEY AUSTIN LLP  
1420 FIFTH AVE., SUITE 1400  
SEATTLE, WA 98101

6

### 3. IDS Itemized Its Adjustments.

Plaintiffs also argue in passing that the typical negotiation adjustment at issue here was "not itemized," and hence was purportedly in violation of the requirement in Subsection 391(4)(b) that insurers provide "itemized" amounts. (*E.g.* Opp. at 2.) But plaintiffs have pled no facts showing that IDS failed to provide insureds with itemized amounts. Meanwhile, the Autosource report – which is properly before the Court – plainly shows that the typical negotiation adjustment *was* "itemized." The report breaks out that adjustment for each of the five comparable vehicles, and lists the dollar amounts produced by that adjustment for each of the five. (Dkt. No. 16-3 at 5-6). That is "itemization" under any definition.

### B. Plaintiffs Fail To Plead Damages.

IDS showed in the opening brief that plaintiffs have failed to plead damages: Plaintiffs do not dispute that they received $19,224 for their vehicle and do not contend that the fair market value of that vehicle was greater than $19,224. (Motion at 10-11.) In response, plaintiffs argue that "Defendants' actions undervalued their total loss claim by approximately $1,100," which they claim is the approximate amount of the typical negotiation adjustment applied to the five comparable vehicles. (Opposition at 9.)

Here again, plaintiffs simply refuse to address the issue of fair market value. But under Washington law, as discussed, plaintiffs are entitled to no more than the fair market value of their vehicle, and plaintiffs do not contend that they received less than that amount. Plaintiffs accordingly fail to plead damages in connection with their first theory of liability – that the typical negotiation adjustment was in itself improper. Plaintiffs also fail to plead damages in connection with their second theory of liability – that the adjustment was not "verifiable." Plaintiffs do not allege that if IDS had furnished them with the raw data to which they suggest they were entitled, this would have yielded an amount greater than they received. In the absence of any such allegations, plaintiffs have not plausibly alleged that they are entitled to relief under any of their claims.[3]

---

[3] Plaintiffs argue that the Court should dismiss their complaint only if "it appears beyond doubt that [the] plaintiff can prove no set of facts in support of his claim that entitle him to relief." (Opp. at 5, citing a decision issued in 1997.) This is plainly wrong. The Supreme Court explicitly disavowed the "no set of facts" formula well over a decade ago. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562-63 (2007) ("there is no need to pile up further citations to show that [the] 'no set of facts' language has been questioned, criticized, and explained away . . . . [T]his famous observation has earned its

REPLY IN SUPPORT OF DEFENDANTS'  
MOTION TO DISMISS  
CASE: 3:19-CV-06235-MLP

SIDLEY AUSTIN LLP  
1420 FIFTH AVE., SUITE 1400  
SEATTLE, WA 98101

7

### C. Plaintiffs Fail To Plead A Claim Against Ameriprise Insurance Company Or Ameriprise Auto And Home Insurance.

Defendants showed in their opening brief that plaintiffs entered into a contract solely with IDS and that plaintiffs have alleged no factual basis for their claims against Ameriprise Insurance Company or Ameriprise Auto and Home Insurance. Plaintiffs respond that "the very first page of the policy clearly identifies [all] three entities in bold print," and that this "indicates a common authorship of the policy." (Opp. at 10.)

Plaintiffs are again wrong. The first page of the policy includes no reference at all to Ameriprise Insurance Company or Ameriprise Auto and Home Insurance and shows that the policy is a contract between plaintiffs and IDS only. (Dkt. No. 16-2 at 2.) Plaintiffs appear to be citing a different page: a cover page on which a representative of IDS authenticated the policy. (Dkt. No. 16-2 at 1.) Plaintiffs' point appears to be that the authentication page is written on letterhead that includes references to all three entities. But letterhead does not make Ameriprise Insurance Company or Ameriprise Auto and Home Insurance the "authors" of the policy. And even if plaintiffs were correct that the authentication page shows "common authorship," the question here is not who "authored" the contract but who is a *party* to the contract. *E.g., Lehrer v. DSHS*, 101 Wn. App. 509, 516 (2000) ("a plaintiff in a contract action must prove a valid contract *between the parties*, breach, and resulting damage") (emphasis added). Even plaintiffs do not allege that Ameriprise Insurance Company or Ameriprise Auto and Home Insurance are parties to the insurance policy from which all of their claims arise.

Plaintiffs also argue that the three entities share a website and a mailing address, and that they use the same marketing strategy. According to plaintiffs, these are indicia of "a centralized source of authority and common management." (Opp. at 10.) But again, even if that were true, it would not show that plaintiffs have stated a claim against Ameriprise Insurance Company or Ameriprise Auto and Home Insurance. Plaintiffs cite no legal principle under which entities sharing "common management" are liable for one another's torts or contractual obligations. In the absence

---

retirement"). This marked a significant development in federal pleading law, and received enormous attention from courts, commentators and lawmakers. *See, e.g.*, Arthur R. Miller, *From Conley to Twombly to Iqbal: A Double Play on the Federal Rules of Civil Procedure*, 60 Duke L.J. 1, 1 (2010).

REPLY IN SUPPORT OF DEFENDANTS'  
MOTION TO DISMISS  
CASE: 3:19-CV-06235-MLP  
8  
SIDLEY AUSTIN LLP  
1420 FIFTH AVE., SUITE 1400  
SEATTLE, WA 98101

of any such authority, plaintiffs have failed to state a claim against these two entities.

## III. CONCLUSION

The Court should dismiss the complaint and this action in their entirety, with prejudice.

Dated: February 21, 2020

Respectfully submitted,

*/s/ Robin Wechkin*

Robin E. Wechkin WSBA No. 24746
SIDLEY AUSTIN LLP
1420 Fifth Avenue, Suite 1400
Seattle, WA 98101
Telephone: (415) 439-1799
rwechkin@sidley.com

Theodore R. Scarborough
(*pro hac vice*)
Christopher M. Assise
(*pro hac vice*)
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, Illinois 60603
Telephone: (312) 853-2236

*Attorneys for Defendants IDS Property Casualty Insurance Company, Ameriprise Insurance Company, and Ameriprise Auto & Home Insurance*

REPLY IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS
CASE: 3:19-CV-06235-MLP

SIDLEY AUSTIN LLP
1420 FIFTH AVE., SUITE 1400
SEATTLE, WA 98101

9

**CERTIFICATE OF SERVICE**

I hereby certify that on February 21, 2020, I caused the attached document to be filed under the CM/ECF rules for the United States District Court for the Western District of Washington. In accordance with their ECF registration agreement and the Court's rules, the Clerk of the Court will send e-mail notification of the filing to:

Deborah M. Nelson
Jeffrey D. Boyd
Nelson Boyd, PLLC
411 University Street, Suite 1200
Seattle, Washington 98101
nelson@nelsonboydlaw.com
boyd@nelsonboydlaw.com

Hank Bates
Tiffany Oldham
519 W. 7th Street
Little Rock, Arkansas 72201
hbates@cbplaw.com
toldham@cbplaw.com

DATED this 21st day of February, 2020

By: <u>/s/ Christopher M. Assise</u>
Christopher M. Assise

REPLY IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS
CASE: 3:19-cv-06235-MLP

SIDLEY AUSTIN LLP
1420 FIFTH AVE., SUITE 1400
SEATTLE, WA 98101

10

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28