UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MAKENZIE ZUERN, *et al.*,

                Plaintiffs,

    v.

IDS PROPERTY CASUALTY
INSURANCE COMPANY, *et al.*,

                Defendants.

Case No. C19-6235-MLP

ORDER

## I.    INTRODUCTION

This matter is before the Court on Defendants' motion to dismiss Plaintiffs' complaint. (Mot. (Dkt. # 16).) Having considered the parties' submissions, the balance of the record, the governing law, and having heard the arguments of counsel, the Court orders that Defendants' motion is DENIED in part and GRANTED in part.

## II.    PROCEDURAL BACKGROUND

Plaintiffs Makenzie and Eric Zuern (collectively, "Plaintiffs") filed a class action on behalf of themselves and all others similarly situated against Defendants IDS Property Casualty Insurance Company ("IDS"), Ameriprise Insurance Company, and Ameriprise Auto & Home Insurance in Pierce County Superior Court (collectively, the "Ameriprise Defendants"). (Compl.

ORDER - 1

(Dkt. 1-1) at ¶¶ 10-12.) Plaintiffs' class action seeks declaratory relief, injunctive relief, and damages as a result of Defendants' alleged common policy and general business practice of using improper adjustments to reduce insureds' total loss valuations and claims payments in violation of Washington law and its contractual obligations. (*Id.* at ¶ 1.) Defendants removed this matter to federal court on December 24, 2019 pursuant to 28 U.S.C. § 1441, arguing this Court has original jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A) ("Class Action Fairness Act" or "CAFA"). (Not. of Removal (Dkt. # 1) at 2-3.) Plaintiffs did not challenge Defendants' removal.

### III.    FACTUAL BACKGROUND

Plaintiffs own a 2014 Nissan Rogue 4WD 4D SUV that was damaged on August 4, 2017. (Compl. at ¶ 22.) Plaintiffs allege that at the time their vehicle was damaged and deemed a total loss, Plaintiffs were covered by automobile insurance with IDS.[1] (*Id.* at ¶ 14.) Plaintiffs submitted a claim with IDS for the total loss of their vehicle. (*Id.* at ¶ 23.) IDS provided a total loss valuation based upon a valuation report it obtained from AudaExplore. (*Id.* at ¶ 24.) AudaExplore is a third-party company that provides market valuation reports that contain values for comparable vehicles recently sold or for sale in the geographic area of the insured. (*Id.* at ¶ 19.) Plaintiff alleges that IDS instructs AudaExplore as to what specific data to include in the report as the basis for the valuation, including whether to include a "typical negotiation" adjustment to the comparable vehicles. (*Id.*) The "typical negotiation" adjustment, according to Plaintiff, is based on undisclosed and unfounded assumptions. (*Id.*)

As alleged, AudaExplore's report included values of five different comparable vehicles and applied a "typical negotiation" adjustment of approximately 6.4% to those vehicles. (*Id.* at

---

[1] Plaintiffs refer to the Defendants collectively as either Ameriprise or Defendants. (Compl. at 1.) As discussed below, the Court finds that Plaintiffs have not plead claims against the Ameriprise Defendants. Accordingly, the Court will refer to IDS as the contracting party with Plaintiff.

1  ¶ 25.) This adjustment decreased the value of each comparable vehicle by approximately

2  $1,100.00. (*Id.*) Based on this report, IDS paid Plaintiffs $17,511 for their claim. (*Id.*) Plaintiffs

3  allege that the "typical negotiation" adjustment made by IDS was a breach of the contract

4  because the contract requires IDS to pay the "actual cash value of the loss vehicle." (*Id.* at ¶ 36.)

5  Plaintiffs further allege that IDS's conduct amounted to a breach of the covenant of good faith

6  and fair dealing and was a violation of Washington's Consumer Protection Act ("CPA"), RCW

7  § 19.86.020. (*Id.* at ¶¶ 39-52.)

8  Defendants moved to dismiss the complaint in its entirety because: (1) IDS did not breach

9  the insurance policy or Washington law when it applied the "typical negotiation" adjustment; (2)

10  Plaintiffs' claims fail because they did not allege sufficient facts to show they were damaged;

11  and (3) Plaintiffs failed to allege any cognizable facts about the Ameriprise Defendants. (*See*

12  *generally* Mot.) As discussed below, the Court agrees that Plaintiffs have failed to allege any

13  cognizable facts about the Ameriprise Defendants and dismisses those Defendants from this

14  lawsuit. As for the remaining claims, the Court does find that the Plaintiffs have alleged

15  sufficient facts to support their claims against IDS for breach of contract, breach of the duty of

16  good faith and fair dealing, and a violation of the CPA.

17  **IV.   DISCUSSION**

18  **A.   Rule 12(b)(6)**

19  "To survive a motion to dismiss, a complaint must contain sufficient factual matter,

20  accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556

21  U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim

22  has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

23  reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 677-78. "A

1  pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause
2  of action will not do.' . . . Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid
3  of 'further factual enhancement.'" *Id.* at 678  (quoting *Twombly*, 550 U.S. at 555, 557).

4        Generally, a district court may not consider any material beyond the pleadings in ruling
5  on a Rule 12(b)(6) motion to dismiss. *Lee v. City of L.A.*, 250 F.3d 668, 688 (9th Cir. 2001)
6  (citations omitted). The Ninth Circuit, however, carves out certain exceptions to this rule. For
7  example, a court may consider "documents whose contents are alleged in the complaint and
8  whose authenticity no party questions, but which are not physically attached to the pleading[.]"
9  *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled on other grounds by Galbraith v.*
10  *Cty. of Santa Clara*, 307 F.3d 1119, 1127 (9th Cir. 2002).

11        Here, Plaintiffs' complaint relies upon both the insurance policy that IDS issued to the
12  Plaintiffs as well as the AudaExplore report in setting forth the allegations in the complaint. (*See*
13  *e.g.*, Compl. at ¶¶ 8, 9, 14, 19, 25.) In its motion, Defendants attached both the contract and the
14  AudaExplore report to the Declaration of Christopher M. Assise. (Assise Decl. (Dkt. # 16-1) at
15  Exs. A & B.) Plaintiffs do not object to these exhibits. The Assise Declaration also includes
16  copies of IDS's claim notes and emails regarding Plaintiffs' claims. (*Id.* at Ex. C.) The Court
17  does not find that these notes are referenced in the complaint and will not consider Exhibit C to
18  the Assise Declaration in ruling on this motion.

19        **B.**      **Ameriprise Defendants**

20        In the introduction to the complaint, Plaintiffs set forth the parties to this action, IDS and
21  the Ameriprise Defendants, and then refers to them collectively as "Ameriprise or Defendants"
22  throughout the complaint. (Compl. at 1.) Defendants move to dismiss the Ameriprise Defendants
23  because it is clear on the face of the contract that Plaintiffs' contracted with only IDS. (Mot.  at

1  11.) Plaintiffs do not dispute this fact but argue that the letterhead for the policy has the

2  Ameriprise logo at the top indicating a common ownership. (Resp. (Dkt. # 22) at 10.) Plaintiffs

3  further argue that the Ameriprise Defendants are liable because (1) these companies share an

4  address with IDS; (2) the SEC Form 10-K for Ameriprise Financial, Inc., states it is the parent

5  company of IDS and the Ameriprise Defendants; and (3) the Ameriprise subsidiaries use co-

6  branded direct marketing strategies. (*Id.*)

7  IDS correctly argues that Plaintiffs' allegations involve only their policy with IDS. (Mot.

8  at 11.) The IDS policy is signed by the Underwriting Supervisor for IDS and there is no signature

9  for the Ameriprise Defendants. (Assise Decl., Ex. A at 1.) Plaintiffs ignored this distinction.

10  Instead, Plaintiffs combined the three entities into one in the very first paragraph of the

11  complaint and completely failed to allege the basis of their claims against each of the

12  Defendants. This is fatal to their claims against the Ameriprise Defendants. *See Flores v. EMC*

13  *Mortg. Co.*, 997 F.Supp.2d 1088, 1103 (E.D. Cal. 2014) (*quoting Gauvin v. Trombatore*, 682

14  F.Supp. 1067, 1071 (N.D. Cal. 1988) ("[a] plaintiff suing multiple defendants 'must allege the

15  basis of [her] claim against each defendant to satisfy Federal Rule of Civil Procedure 8(a)(2),

16  which requires a short and plain statement of the claim to put defendants on sufficient notice of

17  the allegations against them.")); *see also Nat'l Union Fire Ins. Co. v. Zillow, Inc.*, No.

18  C16-1461JLR, 2017 WL 1354147, at *4 (W.D. Wash. Apr. 13, 2017), *aff'd in part, rev'd in part*

19  *and remanded Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Zillow, Inc.*, No. 17-35404, 2020

20  WL 774366 (9th Cir. Feb. 18, 2020). Accordingly, the Court dismisses the Ameriprise

21  Defendants from this action without prejudice.

22

23

### C. Breach of Contract

Plaintiffs' first cause of action alleges that IDS is in breach of its policy with Plaintiffs. In Washington, an insurance policy is construed as a contract and given "fair, reasonable, and sensible construction as would be given to the contract by the average person purchasing insurance." *Xia v. ProBuilders Specialty Ins. Co.*, 188 Wash.2d 171, 181 (2017), *as modified* (Aug. 16, 2017) (quoting *Key Tronic Corp., Inc. v. Aetna (CIGNA) Fire Underwriters Ins. Co.*, 124 Wash.2d 618, 627 (1994) (quoted citations omitted)). To establish breach of contract, Plaintiffs must allege: (1) the existence of a valid contract; (2) breach of that contract; and (3) resulting damages. *See Storti v. Univ. of Wash.*, 181 Wash.2d 28, 35 (2014). Plaintiffs allege IDS breached its contract with Plaintiffs by failing to pay total loss claims upon the actual cash value of the loss vehicles and by applying the improper "typical negotiation" adjustment. (Compl. at ¶¶ 34-38.)

Plaintiffs assert that IDS's insurance contract provides coverage for the total loss of a vehicle in a collision on the basis of either: (1) the actual cash value of the vehicle; or (2) the amount necessary to replace the insured vehicle with a vehicle of like kind and quality. (*Id.* at ¶ 35.) Here, the second basis is not applicable. Plaintiffs argue the "actual cash value" in the first basis is determined by Washington Administrative Code ("WAC") § 284-30-391 ("Subsection 391"). (*Id.*) IDS argues that Plaintiffs' breach of contract claim relies on an incorrect reading of Subsection 391. (Mot. at 9.) Specifically, IDS argues the term "actual cash value" is defined as a vehicle's fair market value before the collision, as provided by WAC § 284-30-320 ("Subsection 320"). (*Id.* (citing WAC § 284-30-320(1) ("'Actual cash value' means the fair market value of the loss vehicle immediately prior to the loss.")).) The fair market value in turn is defined as "that which an informed buyer would willingly pay and an informed seller would accept."

ORDER - 6

*DePhelps v. Safeco Ins. Co. of Am.*, 116 Wash. App. 441, 453 (2003) (quoting *State v. Rowley*, 74 Wash.2d 328, 334 (1968)).

IDS's argument for dismissal was originally based on the theory that Plaintiffs had not alleged it paid them less than the actual cash value of their car because the complaint did not assert any allegations as to the fair market value of Plaintiffs' car. (Mot. at 6.) According to IDS, Plaintiffs' failure to allege the fair market value of their car leads to a finding that they have failed to state a claim for breach of the policy or a violation of Subsection 391, as discussed below. (*Id.*) IDS is correct that Plaintiffs did not allege a specific fair market value for their vehicle. Rather, Plaintiffs' breach of contract claim is based on allegations that IDS took impermissible deductions to the listed sales price of comparable vehicles and failed to properly itemize and explain those deductions. (Resp. at 5-6.) Specifically, Plaintiffs take issue with IDS's across-the-board reduction of approximately 6% for all comparable vehicles listed for sale in the geographical area. (Assise Decl., Ex. B (AudaExplore Report at 5 ("In the case of this 2014 Nissan Rogue, the difference between the asking price and selling price is generally 6%.").)

Accordingly, the damages alleged in the complaint is the difference between the list price and the "typical negotiation" adjustment or deductions that IDS applied.[2] Plaintiffs claim these deductions were improper for two reasons. First, Subsection 391 only permits deductions for "options, mileage, and equipment" and, second, Subsection 391 requires that offers by the insurance company are to be based on "itemized and verifiable dollar amounts." (Resp. at 9.) The Court considers each argument in turn.

---

[2] Plaintiffs specifically argue Defendants undervalued their total loss claim by approximately $1,100.00 and that Defendants have represented that over 2,000 Washington insurance policyholders were subjected to the "typical negotiation" adjustment resulting in deductions of $2,340,841. (Not. of Removal at ¶¶ 6, 7(a).)

ORDER - 7

### *a. Options, Mileage, or Condition*

Plaintiffs cite to WAC § 284-30-391(4)(b) for the argument that an insurer can only use three enumerated deductions in determining the actual cash value of a vehicle: options, mileage, and equipment.[3] (Resp. at 6.) Subsection 391(4)(b) sets forth the insurer's duty when using one of three methods for settling the total loss vehicle claim. The three methods are outlined in Subsection 391(1)-(3). The regulation states that the insurer must "take reasonable steps to ensure that the agreed value is accurate and representative of the *actual cash value* of a *comparable motor vehicle* in the principally garaged area." WAC § 284-30-391 (emphasis added). Subsection 391 further provides that if the insurer uses one of the three methods outlined in the subsection, the insurer must base:

> all offers on itemized and verifiable dollar amounts for vehicles that are currently available, or were available within ninety days of the date of loss, using appropriate deductions or additions for options, mileage or condition when determining comparability.

WAC § 284-30-391(4)(b). Plaintiffs contend that this section prevents IDS from taking any deductions when determining comparability that are not based on options, mileage, or condition. IDS counters that Subsection 391(4)(b) does not create an exhaustive list of factors for the insurer to use as the regulation does not use the word "only." (Reply (Dkt. # 27) at 1, 6.)

In this case, IDS used method two to determine a settlement value. Method two permits an insurer to use a computerized source to establish a statistically valid actual cash value of the loss vehicle. *See* WAC § 284-30-391(2)(b)(iv). There are specific requirements if an insurer uses a computerized source to determine its settlement offer: (1) the source must have an appropriate

---

[3] Plaintiffs erroneously quote Subsection 391's enumerated factors as "options, mileage, and equipment" instead of "options, mileage or condition." (*Cf.* WAC § 284-30-391(4)(b) *with* Resp. at 6.) This does not change the Court's analysis.

data base, Subsection 391(2)(b)(iv)(A); (2) the source must produce actual cash values based on current data within a reasonable distance of the garaged car, Subsection 391(2)(b)(iv)(B); (3) the source must rely on actual cash values of comparable vehicles that are currently available or were available in the market place within 90 days, Subsection 391(2)(b)(iv)(C); and (4) the source must provide a list of comparable vehicles used to determine the actual cash value, Subsection 391(2)(b)(iv)(D). WAC § 284-30-391(2)(b)(iv). In addition to the requirements for utilizing a computerized source, Subsection 391 sets forth the additional requirements for any settlement offer regardless of method used. WAC § 284-30-391 ("Unless an agreed value is reached, the insurer must adjust and settle vehicle total losses using the methods set forth in subsections (1) through (3) of this section. Subsections (4) through (6) of this section establish standards of practice for the settlement of total loss vehicle claims."). The additional requirements include Subsection 391(4)(b)'s description of appropriate deductions to include options, mileage, or condition. *Id.*

It appears that no Washington court has determined whether Subsection 391(4)(b)'s enumerated list of possible deductions is an exhaustive list. A plain reading of the regulation suggests that the list is exhaustive to the extent it provides the basis for deducting or adding to the value of a comparable vehicle. The question before the Court is whether Plaintiffs have alleged a plausible breach of contract claim against IDS for making an inappropriate deduction to the value of a comparable vehicle that was not based on option, mileage, or condition. IDS in turn argues that if the only factors it could consider in determining the actual cash value of a vehicle were option, mileage, or condition then it would make Subsection 320's use of the term "fair market value" meaningless. IDS contends that the 6% reduction in list price for the comparable vehicles was not a deduction but rather a reflection of the fair market value analysis

ORDER - 9

taking into account the fact that a willing buyer will not pay list price. (Resp. at 7 ("Insurers use the typical negotiation adjustment to determine the fair market value of the comparable vehicles *before* comparing those vehicles to the insured vehicle.") The AudaExplore report seems to be consistent with IDS's position. The report separates the deductions made based on vehicle description (*i.e,* mileage, equipment, and condition) and the "selling price adjustment" or "typical negotiation" adjustment. (Assise Decl., Ex. B at 5-6; Reply at 7.)

The Court agrees with IDS's interpretation of the interplay between Subsections 391 and 320 in that the "typical negotiation" adjustment is a tool utilized for determining the fair market value of a vehicle when only the list price of vehicles is available. It is not a deduction of the kind listed in Subsection 391(4)(b). This determination, however, is not dispositive of whether Plaintiffs have stated a claim for breach of contract. The Court finds Plaintiffs' second theory for breach of contract is facially plausible.

### b. *Itemized and Verifiable*

Plaintiffs also allege that Subsection 391(4)(b) requires the insurer to base all offers on "itemized and verifiable dollar amounts for vehicles currently available" and IDS failed to provide an itemized and verifiable basis for its 6% reduction of list prices. It appears that no Washington court has addressed the meaning and application of "itemized and verifiable dollar amounts." Plaintiffs cite to the Honorable Robert J. Bryan's opinion in *Lundquist v. First Nat'l Ins. Co. of Am.*, for support for their argument that IDS was required to provide additional information on how it calculated the 6% reduction to the list prices. No. C18-5301RJB, 2018 WL 3344791 (W.D. Wash. July 9, 2018).[4] In *Lundquist*, Judge Bryan held:

> [S]ubsection [391](4)(b) contains a disclosure requirement: offers are to be based on "itemized and verifiable dollar amounts." Merriman Webster defines the term

---

[4] Plaintiffs erroneously cite to a June 13, 2018 vacated order by Judge Bryan in the same case. The vacated order was refiled in almost identical form on July 9, 2018, however.

ORDER - 10

> "itemized" as "to set down in detail or by particulars; list;" and defines "verifiable" as to be able to "establish the truth, accuracy or reality of." First National points out that itemized means to create a list—and asserts that it did list of (sic) several factors taken into account in establishing the value of the comparable vehicles. First National does not account for the additional requirement—that the dollar amounts must also be "verifiable" or capable of being established as accurate. The term "verifiable" would be rendered meaningless if it was not intended to allow the claimant an opportunity to establish whether the dollar amount was accurate by disclosure of the amount.

*Id.* at *4. At the outset, the Court finds that the requirement that the insurer's offer be "itemized and verifiable" applies to its calculations of the actual cash value of the comparable vehicles.

The only information that IDS provided to Plaintiffs as to why it reduced the list price for the comparable vehicles was the following sentence in the AudaExplore Report: "In the case of this 2014 Nissan Rogue, the difference between the asking price and selling price is generally 6%." (Assise Decl., Ex. B at 5.) The question before the Court is whether this statement is sufficient to meet the definition of "verifiable". That is, have Plaintiffs alleged that this statement is insufficient to "establish the truth, accuracy or reality of" the "typical negotiation" adjustment? IDS argued during the hearing on its motion that Plaintiffs had the information as to where the comparable vehicles were being offered for sale and that they could have called the dealers themselves and "verified" that the actual sales price was lower than the listed price. While that may be true, the Court finds that Plaintiffs have plausibly alleged that the information provided by IDS as to the basis for the "typical negotiation" adjustment was insufficient to meet the requirements of Subsection 391 and plausibly alleges a breach of contract claim.

**D.     Breach of Duty of Good Faith and Fair Dealing**

Plaintiffs' second cause of action alleges that IDS is in breach of its duty of good faith and fair dealing. (Compl. at ¶¶ 40-44.) Plaintiffs claim that IDS violated its duty by valuing and paying the insured's loss based on valuations of comparable vehicles that it had artificially

reduced by, *inter alia*, unverified methods. (*Id.* at ¶ 42.) "Under Washington law, there is in every contract an implied duty of good faith and fair dealing that obligates the parties to cooperate with each other so that each may obtain the full benefit of performance." *Rekhter v. State, Dep't of Soc. & Health Servs.*, 180 Wn.2d 102, 112 (2014). In the context of insurance contracts, the duty of good faith and fair dealing requires that an insurer exercise its discretion reasonably. *See Curtis v. N. Life Ins. Co.*, 147 Wash. App. 1030, *5 (2008). The Court finds that Plaintiffs have plausibly alleged that IDS violated its duty of good faith and fair dealing by alleging that IDS failed to provide verifiable information relating to the "typical negotiation" adjustment to the actual cash value of the comparable vehicles.

### E. Consumer Protection Act

Plaintiffs third cause of action is for violation of Washington's CPA. The CPA was enacted to protect the public from "unfair or deceptive acts or practices in the conduct of any trade or commerce." *Indoor Billboard/Washington, Inc. v. Integra Telecom of Washington, Inc.*, 162 Wash.2d 59, 73 (2007) (quoting RCW 19.86.020). The CPA is to "be liberally construed that its beneficial purposes may be served." *Thornell v. Seattle Serv. Bureau, Inc.*, 184 Wash.2d 793, 799 (2015) (*quoting* RCW 19.86.920). Here, Plaintiffs allege that the unverified and inappropriate deductions made by IDS was an unfair and/or deceptive act or practice under the CPA. Accordingly, the Court finds that Plaintiffs have alleged a plausible violation of the CPA.

### F. Declaratory Judgment.

Plaintiffs seek a declaration that IDS's conduct of paying total loss claims to insureds based on valuations of comparable vehicles that were reduced based on unfounded, inappropriate, nonitemized, unverified, and/or unexplained was a violation of Subsection 391. For the same reasons that the Court denies IDS's motion to dismiss the substantive counts

1  discussed above, the Court likewise dismisses IDS's motion to dismiss Plaintiffs' claim for
2  declaratory judgment.

3                                V.      CONCLUSION

4      For the foregoing reasons, Defendants' motion to dismiss (dkt. # 16) is DENIED in part
5  and GRANTED in part. The motion is DENIED as to Plaintiffs claims against Defendant IDS
6  and GRANTED as to the Ameriprise Defendants.
7      Dated this 4th day of May, 2020.

MICHELLE L. PETERSON
United States Magistrate Judge