The Honorable Michelle L. Peterson

1
2
3
4
5

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON**

6
7
8

**MAKENZIE and ERIC ZUERN, on behalf of themselves and all others similarly situated,**

**Plaintiffs,**

**vs.**

**IDS PROPERTY CASUALTY INSURANCE COMPANY, a foreign insurer; AMERIPRISE INS. CO., a foreign insurer; and AMERIPRISE AUTO & HOME INS., a foreign insurer,**

**Defendants.**

Case No.:  **3:19-CV-06235-MLP**

**MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT AND INCORPORATED MEMORANDUM OF LAW IN SUPPORT**

NOTE ON MOTION CALENDAR: January 8, 2021

ORAL ARGUMENT REQUESTED

Motion for Preliminary Approval of Settlement
and Incorporated Memorandum of Law in Support
case no. 3:19-CV-06235-MLP

# <u>TABLE OF CONTENTS</u>

I.     INTRODUCTION ................................................................................1

II.    SUMMARY OF THE PROCEEDINGS ................................................2

III.   SUMMARY OF THE PROPOSED SETTLEMENT.............................5

    A.    Settlement Benefits ...............................................................5

    B.    Notice ...................................................................................7

    C.    Class Counsel's Application for (i) Attorneys' Fees and Costs and (ii) a Service Award ...............................................8

IV.   PROPOSED SCHEDULE OF EVENTS ..............................................9

V.    APPLICABLE LEGAL STANDARDS ...............................................10

VI.   THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL .............................................................12

    A.    The Settlement Satisfies the Criteria for Preliminary Approval ....................12

        1.    The Settlement Was the Result of Arm's Length Negotiations Between the Parties, Has No Obvious Deficiencies, and Treats Settlement Class Members Equally ....................12

        2.    The Settlement Falls Within the Range of a Reasonable Settlement While Guaranteeing Settlement Class Members Tangible and Immediate Benefits Without the Risks of Further Litigation ....................15

    B.    The Proposed Notice Program Is Adequate....................17

V.    CONDITIONAL CERTIFICATION OF THE SETTLEMENT IS APPROPRIATE ...........................................................................19

    A.    The Class Is Sufficiently Numerous ................................19

    B.    There Are Common Issues of Law or Fact Common to the Settlement Class....................20

    C.    The Claims of Plaintiffs Are Typical of the Claims of the Settlement Class....................20

-i-

D.  Plaintiffs and Class Counsel Will Fairly and Adequately
Represent the Interests of the Settlement Class ...............................................21

E.  The Common Questions of Law and Fact in this Action
Predominate Over Any Individual Issues and a Class Action
Is the Superior and Most Efficient Means to Adjudicate the Claims .............22

1.  Common Questions of Law and Fact Predominate ............................22

2.  A Class Action is the Superior Method of Adjudicating
this Case ............................................................................................23

VI.  CONCLUSION............................................................................................................23

## TABLE OF AUTHORITIES

<u>Cases</u>                                                                                      <u>Page No.</u>

*Adkins v. Facebook, Inc.*,
Case No. C 18-05982 WHA, 2020 WL 6710086 (N.D. Cal. Nov. 15, 2020) ...................... 11

*Amchem Products Inc. v. Windsor*,
521 U.S. 591 (1997).......................................................................................................22, 23

*Armstrong v. Bd. Of Sch. Dir. Of City of Milwaukee*,
616 F.2d 305 (7th Cir. 1980) ........................................................................................... 12

*Booth v. Appstack, Inc.*,
No. C13–1533JLR, 2015 WL 1466247 (W.D. Wash. Mar. 30, 2015) ................................ 20

*Churchill Village, L.L.C. v. General Elec.*,
361 F.3d 566 (9th Cir. 2004) .......................................................................................16, 17

*Class Plaintiffs v. City of Seattle*,
955 F.2d 1268 (9th Cir. 1992) ......................................................................................... 12

*Deaver v. Compass Bank, et al.*,
2015 WL 4999953 (N.D. Cal. Aug. 21, 2015) ...............................................................11, 13

*Ellis v. Costco Wholesale Corp.*,
657 F.3d 970 (9th Cir. 2011) .......................................................................................... 21

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) .................................................................................12, 20, 22

*Hanon v. Dataprods. Corp.*,
976 F.2d 497 (9th Cir. 1992) ......................................................................................20, 21

*Hendricks v. Starkist Co.*,
No. 13-CV-00729-HSG, 2015 WL 4498083 (N.D. Cal. July 23, 2015) ............................... 14

*Hughes v. Microsoft Corp.*,
No. C98-1646C, 2001 WL 34089697 (W.D. Wash. 2001) ................................................ 13

*Ikuseghan v. Multicare Health Sys.*,
No. C14-5539 BHS, 2015 WL 4600818 (W.D. Wash. July 29, 2015) .................................. 20

*In re Apple Computer Sec. Litig.*,
No. C-84-20148-(A)-JW, 1991 Westlaw 238298 (N.D. Cal. Sept. 6, 1991)......................... 17

*In re Bluetooth Headset Prods. Liab. Litig.*,
654 F.3d 935 (9th Cir. 2011) .......................................................................................... 13

*In re M.L. Stern Overtime Litig.*,
Case No. 07-CV-0118-BTM (JMA), 2009 WL 995864 (S.D. Cal. April 13, 2009) ........10, 11

-iii-

*In re Michael Milken & Assocs. Sec. Litig.*,
   150 F.R.D. 46 (S.D.N.Y. 1993) ................................................................16

*In re NASDAQ Market-Makers Antitrust Litig.*,
   176 F.R.D. 99 (S.D.N.Y. 1997) ................................................................11

*In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*,
   227 F.R.D. 553 (W.D. Wash 2004) ..........................................................13

*In re Prudential Ins. Co. of Am. Sales Practice Litig.*,
   148 F.3d 283 (3d Cir. 1998) .....................................................................22

*In re Tableware Antitrust Litig.*,
   484 F. Supp. 2d 1078 (N.D. Cal. 2007) ...................................................15

*In re Warner Comm. Sec. Litig.*,
   618 F. Supp. 735 (S.D.N.Y. 1985), *aff'd,* 798 F.2d 35 (2d Cir. 1986) .....16

*Kui Zhu, et al., v. Taronis Technologies Incorporated, et al.*,
   2020 WL 6868906 (D. Ariz. Nov. 23, 2020) ...........................................10

*McCluskey v. Trs. of Red Dot Corp. Emp. Stock Ownership Plan & Trust*,
   268 F.R.D. 670 (W.D. Wash. 2010) .........................................................19

*Newman v. Stein*,
   464 F.2d 689 (2d Cir. 1972) .....................................................................15

*Noll v. eBay, Inc.*,
   309 F.R.D. 593 (N.D. Cal. 2015) .............................................................16

*Rael v. Children's Place, Inc.*,
   2020 WL 434482 (S.D. Cal. Jan. 28, 2020) .............................................12

*Stanger v. China Elec. Motor, Inc.*,
   812 F.3d 734 (9th Cir. 2016) .................................................................8, 14

*Strougo v. Bassini*,
   258 F. Supp. 2d 254 (S.D.N.Y. 2003) ......................................................16

*Uschold v. NSMG Shared Services, LLC*,
   333 F.R.D.157 (N.D. Cal. 2019) ..............................................................11

*Villegas v. J.P. Morgan Chase & Co.*,
   2012 WL 5878390 (N.D. Cal. Nov. 21, 2012) .........................................13

*West Virginia v. Chas. Pfizer & Co.*,
   314 F. Supp. 710 (S.D.N.Y. 1970), *aff'd,* 440 F.2d 1079 (2d Cir. 1971) ......16, 17

*Williams v. First Nat'l Bank*,
   216 U.S. 582 (1910).................................................................................12

-iv-

| **Other Authorities** | **Page No.** |
|---|---|
| A. Conte & H. B. Newberg, *Newberg on Class Actions*, § 11.25 (4th ed. 2002) | 11 |
| Fed. R. Civ. P. 23(a)(4) | 21 |
| Fed. R. Civ. P. 23(b)(3) | 22 |
| Manual for Complex Litigation Fourth § 21.632 (2004) | 10 |
| Wash. Admin. Code § 284-30-391 | 4 |
| Wash. Admin. Code §, 284-30-391(4)(b) | 3 |
| Wash. Admin. Code §, 284-30-391(5)(d) | 3 |

MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT
AND INCORPORATED MEMORANDUM OF LAW IN SUPPORT
CASE NO. 3:19-CV-06235-MLP

Plaintiffs Makenzie and Eric Zuern ("Plaintiffs"), by and through undersigned counsel and pursuant to Stipulation and Agreement of Settlement, dated December 11, 2020, filed herewith (the "Settlement Agreement"), and the exhibits attached thereto, hereby move this Court for preliminary approval of the proposed settlement (the "Settlement") of the above-referenced action (the "Action"). More specifically, Plaintiffs respectfully request this Court enter an order, in substantial form to the proposed order attached as Exhibit 2 to the Settlement Agreement, (i) conditionally certifying the Settlement Class; (ii) preliminarily approving the proposed Settlement as fair, reasonable, and adequate; (iii) approving the form and manner of notice and directing that notice of the proposed Settlement be given to members of the Settlement Class; and (iv) scheduling a hearing before the Court to determine whether the Settlement should be finally approved.

## I.    INTRODUCTION.

Plaintiffs, on behalf of themselves and the members of the Class, and Defendant IDS Property and Casualty Insurance Company n/k/a American Family Connect Property and Casualty Insurance Company ("Defendant") (collectively with Plaintiffs, the "Parties") have reached a proposed Settlement in this Action. The Settlement was reached only after intensive litigation, discovery, and arm's length negotiations, including two full-day mediation sessions. The Settlement provides significant and material benefits to the Settlement Class, primarily a settlement fund of $1,750,000, which represents 76% of the total amount ($2,288,832) in negative adjustments that Plaintiffs allege were improperly applied by Defendant when determining the actual cash value of Settlement Class Members' totaled vehicles. Moreover, the proposed Notice Program is designed to provide individualized notice to each Settlement Class Member identified through discovery and a search of Defendant's records. Notice will be

-1-

provided by both postal mail and email, when available, and will notify each Settlement Class Member of their anticipated recovery amount. There is no claims process; instead, each Settlement Class Member who does not opt out will automatically receive a check. Unclaimed funds will be distributed *pro rata* in a secondary distribution to those who participated in the initial distribution. Thereafter, any residual funds will be disbursed to the Legal Foundation of Washington as a *cy pres* award. No funds from the Settlement will revert to Defendant. Class Counsel will request attorney's fees equal to 25% of the Settlement Fund (the benchmark in the Ninth Circuit for percentage-of-fund method) and approximately $17,000 in expenses. Also, consistent with Ninth Circuit precedent, Plaintiffs request $2,500 each in service awards. Settlement administrative costs are estimated not to exceed $40,000, which is only 2% of the Settlement Fund. Class Counsel believe that this is an excellent result for the Settlement Class.

Accordingly, Plaintiffs respectfully submit that the Court should conditionally certify the Settlement Class, preliminarily approve the Settlement, provide for notice to the Settlement Class, and schedule a hearing before the Court to determine whether the Settlement should be finally approved.

## II.    SUMMARY OF THE PROCEEDINGS.

On October 25, 2019, Plaintiffs, on behalf of themselves and all others similarly situated, filed a Class Action Complaint (the "Complaint") in the Superior Court of the State of Washington, Pierce County, against IDS, Ameriprise Ins. Co. ("Ameriprise Ins."), and Ameriprise Auto & Home Ins. ("Ameriprise Auto & Home") (Ameriprise Ins. and Ameriprise Auto & Home are collectively referred to as the "Ameriprise Defendants"), which was subsequently removed to this Court. The Complaint asserts four claims: (1) breach of contract, (2) breach of the covenant of good faith and fair dealing, (3) violation of the Consumer Protection

1   Act, and (4) declaratory judgment. More specifically, Plaintiffs allege that the subject insurance

2   contracts in this case provide coverage for the total loss of a vehicle on the basis of "actual cash

3   value" of the vehicle, and IDS and the Ameriprise Defendants breached the contract and

4   Washington law by not paying total loss claims upon the "actual cash value" of loss vehicles.

5   Plaintiffs further allege that IDS and the Ameriprise Defendants departed from the use of "actual

6   cash value" by basing their valuations and claims payments on the values of comparable vehicles

7   that had been artificially reduced by a "typical negotiation" deduction (the "Typical Negotiation

8   Adjustment") that was nonitemized, unverified, unexplained, and that lacked a foundation in

9   market realities. Plaintiffs aver that IDS employed a routine total loss settlement process that

10  involved obtaining a market valuation report from Audatex North America, Inc. ("Audatex").

11  These market valuation reports reduced the estimated value to comparable vehicles by applying

12  improper adjustments, such as the Typical Negotiation Adjustment.

13      Plaintiffs allege that these downward adjustments are improper for two, interrelated

14  reasons. First, Wash. Admin. Code § 284-30-391(4)(b) and (5)(d) require that any allowable

15  adjustments to a vehicle's actual cash value be measurable, justified, and fully explained to

16  insureds so that insureds have the ability to evaluate and challenge them. However, IDS provided

17  no measurable justification or explanation for their "typical negotiation" adjustment or even any

18  disclosure that such an analysis was actually completed prior to applying the adjustment. Second,

19  the Typical Negotiation Adjustment is arbitrary and contrary to auto pricing and inventory

20  management in the used vehicle marketplace.

21      In their Motion to Dismiss filed on January 21, 2020 (ECF No. 16), IDS and the

22  Ameriprise Defendants argued for dismissal of Plaintiffs' complaint in its entirety upon the

23  following grounds: (1) IDS did not breach the insurance policy or Washington law when it

-3-

applied the "typical negotiation" adjustment; (2) Plaintiffs' claims fail because they did not allege

sufficient facts to show they were damaged; and (3) Plaintiff failed to allege any cognizable facts

about the Ameriprise Defendants.

On May 4, 2020, the Court entered an order denying in part and granting in part the

Motion to Dismiss (ECF No. 36). Specifically, the Court sustained all claims against IDS on

Plaintiffs' theory that IDS had applied a deduction in violation of the disclosure provisions of

Wash. Admin. Code § 284-30-391;[1] held that Plaintiffs sufficiently alleged damages in an

amount equal to the Typical Negotiation Adjustment or deduction that IDS applied; and

dismissed Plaintiffs' claims, without prejudice, against the Ameriprise Defendants.

During the pendency of the Motion to Dismiss and thereafter, the Parties engaged in

extensive written discovery, as well as third-party discovery with Audatex and the industry's

other two leading valuation companies: CCC Information Services, Inc. (which IDS now uses)

and Mitchell International, Inc. This discovery included extensive data from both Defendant and

Audatex identifying the relevant claim files and the dollar amounts of the Typical Negotiation

Adjustments, as well as Negative Condition Adjustments.

In addition, Plaintiffs deposed Karen Brunner, the claims adjuster for Plaintiffs' claim,

and Jodi Helf, a senior claims adjuster identified by Defendant as having knowledge of the

handling of Plaintiffs' claim and IDS's policies and procedures for handling claims, as well as

Audatex's valuation reports and the amount that IDS paid Plaintiffs pursuant to their policy. Ms.

Helf was also scheduled to give a Rule 30(b)(6) deposition, but upon agreement of the Parties

---

[1] The Court rejected Plaintiffs' alternative theory for breach of contract, *i.e.*, that WAC § 284-30-391 provides an exclusive list of deductions when determining the value of a comparable vehicle, and a typical negotiation adjustment is not a permitted deduction.

MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT
AND INCORPORATED MEMORANDUM OF LAW IN SUPPORT
CASE NO. 3:19-CV-06235-MLP

and Court approval, further depositions and class certification briefing were stayed pending mediation.

On August 11, 2020, the Parties engaged in a full-day mediation session before well-respected mediator Stew Cogan. While the Parties made significant strides with the assistance of Mr. Cogan, they were unable to reach a mutually acceptable resolution to this case. The Parties agreed to continue settlement talks thereafter. With the assistance of Mr. Cogan and after further exchange of confidential information related to class size and damages, the Parties agreed to a second mediation session. After a second full-day mediation session with Mr. Cogan on September 25, 2020, the Parties reached mutually agreeable terms of settlement, which they transcribed into a Memorandum of Understanding. On October 5, 2020, the Parties informed this Court that they had reached an agreement in principle on key settlement terms and structure (ECF No. 45); and, on October 6, 2020, this Court stayed the litigation for a period through and including November 20, 2020 to provide time for the parties to finalize the settlement terms (ECF No. 46). Thereafter, the Parties worked cooperatively together to use the Memorandum of Understanding to draft a comprehensive Settlement Agreement and exhibits thereto. On November 20, 2020, the Parties filed a Joint Stipulation asking for the stay to be extended for a period through and including December 11, 2020 to allow the Parties to finalize these documents (ECF No. 47), which was granted by the Court on November 23, 2020 (ECF No. 48).

## III.    SUMMARY OF THE PROPOSED SETTLEMENT.

### A.  Settlement Benefits.

Under the proposed Settlement, Defendant shall establish a cash settlement fund of $1,750,000.00 (the "Settlement Fund") for the benefit of Settlement Class Members. In accord with paragraph 1.18 of the Settlement Agreement, the Settlement Class shall include:

All persons insured by a contract of automobile insurance issued by IDS to a Washington resident, and who, from October 25, 2013 through the date of the order granting preliminary approval, received compensation for the total loss of their vehicles under their First Party Coverages (Comprehensive, Collision, and UIM) and received a total loss valuation from IDS based upon an Audatex valuation.

Unless a Settlement Class Member submits a valid and timely Request for Exclusion (*see* paragraphs 6.1-6.3 of the Settlement Agreement), he or she will automatically receive for each of his or her claims a *pro rata* distribution from the Settlement Fund less any court-approved attorneys' fees and costs, service award, and all costs of notice and settlement administration (the "Distributable Settlement Amount"). Settlement Agreement at ¶ 3.2. The *pro rata* distribution to be paid for each claim will be calculated using the following calculations. First, the *pro rata* ratio will be calculated by dividing the Distributable Settlement Amount by the sum of all Typical Negotiation Adjustments and Negative Condition Adjustments applied to all claims of all Settlement Class Members. Then, the *pro rata* distribution to be paid for each individual claim will be calculated by multiplying that *pro rata* ratio by the sum of the Typical Negotiation Adjustment and any Negative Condition Adjustment applied to that individual claim. *Id.*

Based on records obtained from Defendant and Audatex, the sum of all challenged Typical Negotiation and Negative Condition Adjustments applied to all Settlement Class Members is $2,288,832. *See* Declaration of Hank Bates ("Bates Declaration") at ¶ 9. The Settlement Fund of $1,750,000 represents roughly 76% of that sum. Class Counsel will request an award of attorneys' fees not to exceed 25% of the Settlement Fund, or $437,500, and reimbursement of out-of-pocket litigation costs not to exceed $17,000. Settlement Agreement at ¶ 7.1. The requested service awards for the Class Representatives will not exceed a total of $5,000 ($2,500 each). *Id.* And administrative costs are estimated to be less than $40,000. *See* Bates Declaration at ¶ 12 and Exhibit 3. Accordingly, the Distributable Settlement Amount is estimated

to be at least $1,250,500, resulting in a *pro rata* ratio of at least 54.6%. *Id.* at ¶ 16. In other words, Settlement Class members are estimated to receive for each claim a check for an amount equal to, or greater than, 54.6% of the sum of the Typical Negotiation Adjustment and any Negative Condition Adjustment applied to their claim.

No funds from the Settlement will revert to Defendant. For any unclaimed money or uncashed checks remaining in the Distributable Settlement Amount after the first distribution (in other words, any checks that remain uncashed more than 121 after they were mailed to Settlement Class Members), a second distribution will be made to Settlement Class Members that cashed their initial checks if economically feasible. If any funds remain in the Settlement Fund, after payment of all approved and/or awarded attorney's fees and costs, expenses, and service awards and the initial and secondary distribution, then said funds will be disbursed to the Legal Foundation of Washington as a *cy pres* award. *See* Settlement Agreement at ¶ 3.7.

In exchange for the consideration from the Defendant, the Action will be dismissed with prejudice upon final approval of the Settlement, and the Settlement Class Members will thereby release all claims against IDS and the Released Parties through the date that the Court enters the Preliminary Approval Order, relating to claims handling of automobile total loss claims using valuation reports provided by Audatex. *See* Settlement Agreement ¶¶1.14-1.16, 9.1-9.2. Released Claims do not include claims unrelated to automobile total losses including claims for bodily injury, personal injury protection, and/or medical payment coverage. *Id.*

**B. Notice.**

As set forth in paragraphs 5.1–5.8 of the Settlement Agreement, notice to Settlement Class Members shall be made by (i) mailing, by first-class US mail, the Notice (substantially in the form attached as Exhibit 2 to the Settlement Agreement); and (ii) emailing the Notice to those

1   Settlement Class Members for whom an email address is available in Defendant's records and

2   was made available as part of the claims process.[2] Skip tracing shall be performed by the

3   Administrator for all returned mail. To the extent it is reasonably able to locate a more current

4   mailing address using skip tracing, the Administrator shall re-mail the returned Notice to the

5   particular Settlement Class Member by first-class US mail. All costs and fees related to

6   dissemination of the Notice and skip tracing will be considered administrative costs to be paid

7   from the Settlement Fund.

8          The Notice includes the following information:  (1) a plain and concise description of the

9   nature of the Action and the proposed Settlement, (2) the right of Settlement Class Members to

10  request exclusion from the Settlement Class or to object to the Settlement, (3) specifics on the

11  date, time and place of the Final Fairness Hearing, and (4) information regarding Class Counsel's

12  anticipated fee application and the anticipated request for the Class Representatives' service

13  award. The Notice also provides an estimate of the recovery amount that the Settlement Class

14  Member will receive for each individual claim.

15  **C.  Class Counsel's Applications for (i) Attorneys' Fees and Costs and (ii) a Service
        Award**.

16

17         The Settlement Agreement provides that Class Counsel will file a motion with the Court

18  requesting an award of attorneys' fees not to exceed 25% of the Settlement Fund,[3] or $437,500,

19  to compensate them for all of the work already performed in this case, all of the work remaining

20  to be performed in connection with this Settlement, and the risks undertaken in prosecuting this

21  case. Class Counsel will also seek reimbursement of out-of-pocket litigation costs not to exceed

22

23

---

[2] Email addresses are available for approximately 98% of the Settlement Class Members identified in Defendant's records. *See* Bates Declaration at ¶ 10.
[3] "The Ninth Circuit has set 25% of the fund as a 'benchmark' award under the percentage-of-fund method." *Stanger v. China Elec. Motor, Inc*., 812 F.3d 734, 738 (9th Cir. 2016).

-8-

1   $17,000. *Id.* at ¶ 7.1. The enforceability of the Settlement is not contingent on the Court's

2   approval of Class Counsel's application for an award of attorneys' fees and costs. *Id.* at ¶ 7.3.

3       The Settlement Agreement further provides that Plaintiffs will request a service award

4   for each Class Representative in an amount not to exceed $2,500 per Class Representative or

5   $5,000 collectively. *Id.* at ¶7.1. These awards will be paid out of the Settlement Fund and will

6   compensate Plaintiffs for their time and effort serving as the Class Representatives. *Id.*

7   **IV.    PROPOSED SCHEDULE OF EVENTS.**

8       Consistent with the provisions of the Settlement Agreement, Plaintiffs respectfully

9   propose the following schedule for the various Settlement events:

10  • Deadline for disseminating Notice by postal mail and email (Ex. 2 to the Settlement

11  Agreement) (the "Notice Deadline"): within twenty (20) calendar days of entry of the

12  Preliminary Approval Order (Settlement Agreement at ¶ 5.2);

13  • Deadline for creating the Settlement Website: twenty (20) calendar days of entry of

14  the Preliminary Approval Order (*see id.* at ¶ 5.4);

15  • Deadline for filing motions in support of Settlement, Plan of Allocation, and Class

16  Counsel's application for award of attorneys' fees and expenses: no later than thirty-

17  five (35) calendar days before the Final Fairness Hearing;

18  • Deadline for submission of the requests for exclusion from the Class or objections to

19  the Settlement, Plan of Allocation, the request for attorneys' fees and expenses: no

20  later than twenty-one (21) calendar days before the Final Fairness Hearing (*see*

21  Settlement Agreement ¶¶ 1.6, and 6.1-6.6);

22

23

- Deadline for submission of reply papers in further support of Settlement, Plan of Allocation, or the request for attorneys' fees and expenses: no later than seven (7) calendar days before the Final Fairness Hearing;

- Final Fairness Hearing: at the Court's convenience, but at least ninety (90) calendar days from entry of the Preliminary Approval Order; and

- Deadline for establishing and funding the Settlement Fund (*see id.* at ¶ 3.3): within fourteen (14) calendar days of the Effective Date.

## V.    APPLICABLE LEGAL STANDARDS.

Rule 23(e) of the Federal Rules of Civil Procedure requires judicial approval of the compromise of claims brought on a class basis. The procedure for judicial review of a proposed class action settlement is well established:

> Review of a proposed class action settlement generally involves two hearings. First, counsel submit the proposed terms of settlement and the judge makes a preliminary fairness evaluation. . . If the case is presented for both class certification and settlement approval, the certification hearing and preliminary fairness evaluation can usually be combined.  The judge should make a preliminary determination that the proposed class satisfies the criteria set out in Rule 23(a) and at least one of the subsections of Rule 23(b) . . . The judge must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of the notice of the certification, proposed settlement, and date of the final fairness hearing.

*In re M.L. Stern Overtime Litig.*, Case No. 07-CV-0118-BTM (JMA), 2009 WL 995864, at *3 (S.D. Cal. April 13, 2009) (quoting Manual for Complex Litigation Fourth § 21.632 (2004)); *Kui Zhu, et al., v. Taronis Technologies Incorporated, et al.*, No. cv-19-04529, 2020 WL 6868906, at *4 (D. Ariz. Nov. 23, 2020) (stating that when considering to grant preliminary approval of a settlement, a court should consider "whether the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiency, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the

-10-

range of possible approval"). Importantly, "[b]ecause class members will subsequently receive notice and have an opportunity to be heard on the settlement, [a] Court need not review the settlement in detail at [the preliminary approval stage]; instead, preliminary approval is appropriate so long as the proposed settlement falls 'within the range of possible judicial approval.'" *M.L. Stern Overtime Litig.*, 2009 WL 995864, at *3 (quoting A. Conte & H. B. Newberg, *Newberg on Class Actions*, § 11.25 (4th ed. 2002)); *Uschold v. NSMG Shared Services, LLC*, 333 F.R.D.157, 169 (N.D. Cal. 2019) (stating "a full fairness analysis is unnecessary at th[e] [preliminary approval] stage," and concluding "[p]reliminary approval is thus appropriate if the proposed settlement appears to be the product of serious, informed, noncollusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval.") (internal quotations omitted).

Applying the venerable standards above, preliminary approval should be granted because the proposed Settlement and the proposed form and program of providing notice satisfy the requirements for preliminary approval in all respects. *See Adkins v. Facebook, Inc.*, No. C 18-05982 WHA, 2020 WL 6710086, at *1 (N.D. Cal. Nov. 15, 2020) (granting preliminary approval upon finding that the proposed settlement "appear[ed] non-collusive and within the realm of approvable"); *Deaver v. Compass Bank, et al.*, No. 13-cv-00222, 2015 WL 4999953, at *6 (N.D. Cal. Aug. 21, 2015) ("[P]reliminary approval of a settlement and notice to the class is appropriate if [1] the proposed settlement appears to be the product of serious, informed, noncollusive negotiations, [2] has no obvious deficiencies, [3] does not improperly grant preferential treatment to class representatives or segments of the class, [4] and falls within the range of possible approval.") (internal quotations and citation omitted); *In re NASDAQ Market-Makers Antitrust*

Motion for Preliminary Approval of Settlement
and Incorporated Memorandum of Law in Support
Case No. 3:19-CV-06235-MLP

1  *Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997) ("Where the proposed settlement appears to be the

2  product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not

3  improperly grant preferential treatment to class representatives or segments of the class and falls

4  within the range of possible approval, preliminary approval is granted.").

5  **VI.    THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL.**

6  As a matter of public policy, settlement is a strongly favored mechanism for resolving

7  disputed claims. *Williams v. First Nat'l Bank,* 216 U.S. 582, 595 (1910). "In the class action

8  context in particular, there is an overriding public interest in favor of settlement." *Armstrong v.*

9  *Bd. Of Sch. Dir. Of City of Milwaukee*, 616 F.2d 305, 313 (7th Cir. 1980) (citation and internal

10  quotation marks omitted), *overruled by Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998); *see also*

11  *Rael v. Children's Place, Inc.*, No. 3:16-cv-00370, 2020 WL 434482, at *10 (S.D. Cal. Jan. 28,

12  2020) (noting the "'strong judicial policy that favors settlements, particularly where complex

13  class action litigation is concerned'") (citing *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268,

14  1276 (9th Cir. 1992)).

15  Turning to the specifics of this Action, preliminary approval of the Settlement should be

16  granted because the Settlement was the result of arm's length negotiations between the Parties,

17  has no obvious deficiencies, treats Settlement Class Members equally, and is within the range of

18  possible approval.

19  **A. The Settlement Satisfies the Criteria for Preliminary Approval.**

20  1. <u>The Settlement Was the Result of Arm's Length Negotiations Between the</u>
   <u>Parties, Has No Obvious Deficiencies, and Treats Settlement Class Members</u>
21  <u>Equally</u>.

22  Courts recognize that arm's-length negotiations conducted by competent counsel are

23  *prima facie* evidence of fair settlements. The Court's role is to ensure "the agreement is not the

-12-

product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998) (internal quotations omitted). Courts will approve class action settlements entered into after good-faith, arm's-length negotiations. *See Hughes v. Microsoft Corp.*, No. C98-1646C, 2001 WL 34089697, at *7 (W.D. Wash. 2001); *In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 227 F.R.D. 553, 567 (W.D. Wash 2004). Moreover, "[t]he use of a mediator and the presence of discovery 'support the conclusion that the Plaintiff was appropriately informed in negotiating a settlement.'" *Deaver*, 2015 WL 4999953, at *4 (quoting *Villegas v. J.P. Morgan Chase & Co.*, No. cv 09-00261, 2012 WL 5878390, at *6 (N.D. Cal. Nov. 21, 2012)).

Here, the Settlement was reached only after extensive factual investigation, motions practice, fulsome discovery and two full-day mediation sessions before a well-respected mediator, Stew Cogan. Thus, Class Counsel had a wealth of information at their disposal before entering into settlement negotiations. Consequently, Class Counsel were able to adequately assess the strengths and weaknesses of Plaintiffs' case and balance the benefits of settlement against the risks of further litigation.

Equally important, counsel for the Defendant vigorously defended their client's position and demonstrated their commitment to litigate this Action to its conclusion. Hence, the proposed Settlement represents concessions by both parties after hard-fought litigation and negotiations conducted by experienced counsel on both sides who were thoroughly familiar with the factual and legal issues.

Additionally, there are no obvious deficiencies in the Settlement Agreement. *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011); *Deaver*, 2015 WL

-13-

4999953, at *4. Settlement Class Members who do not exclude themselves will automatically receive for each of their claims a *pro rata* distribution from the Settlement Fund less any court-approved attorneys' fees and costs, service awards, and costs of settlement notice and administration. The anticipated requests for attorneys' fees and costs and service awards are reasonable and directly in line with prevailing standards in the Ninth Circuit. *Stanger*, 812 F.3d at 738 ("The Ninth Circuit has set 25% of the fund as a 'benchmark' award under the percentage-of-fund method."). Furthermore, the Settlement provides for an initial and secondary distribution, with any remaining funds being disbursed to the Legal Foundation of Washington as a *cy pres* award. *See* Settlement Agreement at ¶ 3.7. Thus, there is no issue of reverter.

Additionally, the scope of the release is not overly broad as Settlement Class Members will release only those claims related to the handling of an automobile total loss claim adjudicated using valuation reports prepared or provided by Audatex. *Id.* at ¶¶ 1.14-1.16 and 9.1-9.2. The releases do not include claims unrelated to automobile total loss valuation including claims for bodily injury, personal injury protection, and/or medical payment coverage or claims where Defendant did not use valuation reports prepared by Audatex. *Id.*

Lastly, there is no unfair or preferential treatment of any Settlement Class Member. *See Hendricks v. Starkist Co.*, No. 13-CV-00729-HSG, 2015 WL 4498083, at *6 (N.D. Cal. July 23, 2015). Here, payments to Settlement Class Members will be made on a *pro rata* basis: the *pro rata* distribution to be paid for each individual claim will be calculated by multiplying the same *pro rata* ratio (approximately 54.6 %) by the sum of any Typical Negotiation Adjustment and Negative Condition Adjustment applied to that individual claim. Settlement Agreement at ¶ 3.2. Thus, each Settlement Class Member is given fair and equal treatment.

-14-

1    In sum, the Settlement was achieved through arm's-length negotiations conducted by

2    competent counsel, contains no obvious deficiencies, and treats Settlement Class Members

3    equally. Accordingly, there are no grounds to doubt the Settlement's fairness.

4    2.    <u>The Settlement Falls Within the Range of a Reasonable Settlement While Guaranteeing Settlement Class Members Tangible and Immediate Benefits Without the Risks of Further Litigation</u>.

5

6    The value of the proposed Settlement falls well within the range of a reasonable

7    settlement. The determination of a "reasonable" settlement is not susceptible to a mathematical

8    equation yielding a particularized sum. *See Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)

9    ("[I]n any case there is a range of reasonableness with respect to a settlement – a range which

10   recognizes the uncertainties of law and fact in any particular case and the concomitant risks and

11   costs necessarily inherent in taking any litigation to completion[.]"). To determine if a settlement

12   falls within the range of possible approval, a court considers "plaintiff's expected recovery

13   balanced against the value of the settlement offer, in light of the risks of further litigation." *In re*

14   *Tableware Antitrust Litig*., 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007).

15   Here, the Parties have determined, based upon Defendant's records, that Defendant

16   applied a total of $2,288,832.00 in Typical Negotiation and Negative Condition Adjustments that

17   Plaintiffs allege were improper. *See* Bates Declaration at ¶ 9. The proposed Settlement creates a

18   Settlement Fund of $1,750,000.00, or roughly 76% of that sum. After deduction for any court-

19   approved attorneys' fees and expenses, service award, costs of notice and administration, the

20   Distributable Settlement Amount is estimated to be at least $1,250,500 resulting in a *pro rata*

21   ratio of at least 54.6%. Therefore, Class Counsel estimates that each Settlement Class Member

22   will receive for each claim a check for an amount equal to, or greater than, 54.6% of the sum of

23   the Typical Negotiation Adjustment and any Negative Condition Adjustment applied to their

-15-

1    claim. *See id.* at ¶ 16. Class Counsel believe this is an excellent result for the Settlement Class

2    Members.

3         While Plaintiffs have calculated the maximum value of their claims to be larger than the

4    settlement amount, when the maximum value of Plaintiffs' and the Class's claims are discounted

5    by the identifiable risks, experience dictates that the interests of the Class are better served by the

6    proposed Settlement. *See Noll v. eBay, Inc.*, 309 F.R.D. 593, 606 (N.D. Cal. 2015) ("Immediate

7    receipt of money through settlement, even if lower than what could potentially be achieved

8    through ultimate success on the merits, has value to a class, especially when compared to risky

9    and costly continued litigation."); *see also West Virginia v. Chas. Pfizer & Co.*, 314 F. Supp.

10   710, 743-44 (S.D.N.Y. 1970), *aff'd*, 440 F.2d 1079 (2d Cir. 1971) ("In considering the proposed

11   compromise, it seems also to be of importance that (if approved) the substantial amounts of

12   money are available for class members now, and not at some distant time in the future. The nature

13   of these actions is such that a final judgment, assuming it to be favorable, could only be obtained

14   after years of expensive litigation. It has been held proper to take the bird in hand instead of a

15   prospective flock in the bush.") (citations omitted); *In re Michael Milken & Assocs. Sec. Litig.*,

16   150 F.R.D. 46, 53 (S.D.N.Y. 1993) (noting that even a favorable jury verdict "is no guarantee of

17   ultimate success").

18        Here, the risks of continued litigation are substantial. Defendant has vigorously denied

19   Plaintiffs' allegations of wrongdoing. *See Churchill Village, L.L.C. v. General Elec.*, 361 F.3d

20   566, 576 (9th Cir. 2004); *Strougo v. Bassini*, 258 F. Supp. 2d 254, 259-60 (S.D.N.Y. 2003) (citing

21   *In re Warner Comm. Sec. Litig.*, 618 F. Supp. 735, 744-45 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35

22   (2d Cir. 1986)). Defendant filed a motion to dismiss early in this case, resulting in the dismissal

23   of two named defendants. Plaintiffs anticipate that IDS would likely have vigorously opposed

-16-

1   class certification and moved for summary judgment if this case were to continue. Thus,

2   continued litigation of the action would have been lengthy and expensive, and the possibility of

3   Plaintiffs litigating this case on a class basis through judgment is uncertain.

4       Moreover, even if Plaintiffs were to prevail through continued litigation, they still face

5   significant risks as an appeal by IDS would be likely. "It is known from past experience that no

6   matter how confident one may be of the outcome of litigation, such confidence is often

7   misplaced." *West Virginia v. Chas. Pfizer & Co.*, 314 F. Supp. at 743-44. For example, in *In re*

8   *Apple Computer Sec. Litig.*, No. C-84-20148-(A)-JW, 1991 WL 238298 (N.D. Cal. Sept. 6,

9   1991), the jury rendered a verdict in favor of plaintiffs and found recoverable damages in excess

10  of $100 million. Nonetheless, the trial court disagreed and overturned the verdict, entering a

11  judgment notwithstanding the verdict for the individual defendants and ordering a new trial with

12  regard to the corporate defendant. *Id*.

13      In sum, the proposed Settlement provides Class Members immediate benefits without the

14  risks and costs of further litigation. In contrast to these tangible, immediate benefits, the outcome

15  of continued litigation and a trial against the Defendant is uncertain. Accordingly, the benefits

16  conferred by the Settlement are within the range of reasonableness. Thus, preliminary approval

17  of the proposed Settlement should be granted.

18      **B.  The Proposed Notice Program Is Adequate.**

19      The Ninth Circuit has recognized that "[n]otice is satisfactory if it generally describes the

20  terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate

21  and to come forward and be heard." *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th

22  Cir. 2004) (internal quotations omitted). Here, the Notice meets all the requirements of Rule

23  23(c)(2)(B) by advising Settlement Class Members of the nature of the claims involved in the

MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT
AND INCORPORATED MEMORANDUM OF LAW IN SUPPORT
CASE NO. 3:19-CV-06235-MLP

case; the essential terms of the Settlement, including the definition of the Settlement Class and the estimated amount of recovery for each claim; the rights of Settlement Class Members to participate in the Settlement, to request exclusion from the Settlement Class or to object to the Settlement, and specifics on the dates for exercising these rights; the requirements for opting out, for objecting, and for making an appearance at the Final Fairness Hearing; and the time and place of the Final Fairness Hearing. Thus, the Notice provides the necessary information for Settlement Class Members to make an informed decision regarding the proposed Settlement. The Notice also contains information regarding the anticipated amount of Class Counsel's requests for attorneys' fees and costs, and service awards for the Class Representatives.

Moreover, the proposed Settlement requires Plaintiffs to notify Settlement Class Members of the proposed Settlement by (i) mailing, by first-class US mail, the Notice; and (ii) emailing the Notice to those Settlement Class Members for whom an email address is available in Defendant's records and was made available as part of the claims process. Thus, Settlement Class Members have been identified from Defendant's internal records and shall receive individual notice.[4]

In addition to the mailed and emailed Notices, a Settlement Website will be established which will provide access to the Notice, as well as other key documents related to the Settlement, including the Settlement Agreement, the Court's Preliminary Approval Order, and Class Counsel's application for attorneys' fees and costs.

Furthermore, Settlement Class Members are not required to submit claim forms in conjunction with the Settlement. Thus, every Settlement Class Member that does not exclude himself, herself, of itself from the Settlement Class is eligible to receive a payment in accord with

---

[4] The Settlement Administrator will perform skip tracing on all returned mail. Settlement Agreement at ¶ 5.2.

MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT
AND INCORPORATED MEMORANDUM OF LAW IN SUPPORT
CASE NO. 3:19-CV-06235-MLP

1    the terms of the Settlement.

2        Accordingly, the form and manner of Notice proposed here fulfills all of the requirements

3    of Rule 23 and due process.

4    **VII.    CONDITIONAL CERTIFICATION OF THE SETTLEMENT IS APPROPRIATE.**

5        In order to proceed with the preliminary approval process, it is necessary for the Court to

6    preliminarily certify a class for purposes of the Settlement. Rule 23 provides that an action may

7    be maintained as a class action if each of the four prerequisites of Rule 23(a) is met and the action

8    qualifies under one of the subdivisions of Rule 23(b). Rule 23(a) provides:

9        (a) Prerequisites. One or more members of a class may sue or be sued as
         representative parties on behalf of all members only if:  (1) the class is so
10       numerous that joinder of all members is impracticable, (2) there are questions
         of law or fact common to the class, (3) the claims or defenses of the representative
11       parties are typical of the claims or defenses of the class, and (4) the representative
         parties will fairly and adequately protect the interests of the class.
12

13   Additionally, Rule 23(b) provides, in relevant part:

14       (b) Types of Class Actions. A class action may be maintained if Rule 23(a) is
         satisfied and if: (1) . . ., or (3) the court finds that the questions of law or fact
15       common to class members predominate over any questions affecting only
         individual members, and that a class action is superior to other available methods
16       for fairly and efficiently adjudicating the controversy.

17   As set forth below, all of the requirements of Rule 23(a) and (b)(3) are met in this case, justifying

18   preliminary certification of the proposed Settlement Class for settlement purposes.

19       **A.  The Class Is Sufficiently Numerous.**

20       "[G]enerally, courts will find that the numerosity requirement has been satisfied when the

21   class compromises 40 or more members …." *McCluskey v. Trs. of Red Dot Corp. Emp. Stock

22   Ownership Plan & Trust*, 268 F.R.D. 670, 674 (W.D. Wash. 2010). Here, based on a review of

23   Defendant's internal records, the Parties have ascertained that the Settlement Class consists of

     over 2800 totaled loss vehicle claims related to individuals that are dispersed throughout the State

-19-

of Washington. As such, the Settlement Class clearly satisfies the numerosity requirement.

**B.  There Are Common Issues of Law or Fact Common to the Settlement Class.**

The commonality requirement of Rule 23(a)(2) is satisfied in this Action because there are many questions of law and fact common to the Settlement Class that focus on Defendant's common practice of applying Typical Negotiation Adjustments and Negative Condition Adjustments in adjusting insureds' total loss claims. *See Booth v. Appstack, Inc*., No. C13–1533JLR, 2015 WL 1466247, at *8 (W.D. Wash. Mar. 30, 2015) (finding TCPA claim raised common issues because the defendant used the same mechanism to play the same message to various individuals); *Ikuseghan v. Multicare Health Sys*., No. C14-5539 BHS, 2015 WL 4600818, at *6 (W.D. Wash. July 29, 2015) (finding commonality satisfied where TCPA claims were predicated on the use of an automated dialing system to make calls on behalf of defendant). These common issues of law and fact include, among other issues:  (1) Whether IDS, as a general business practice, reduced estimated values to comparable and loss vehicles by applying adjustments, such as the Typical Negotiation Adjustment; (2) Whether the Typical Negotiation Adjustments are based on undisclosed and unfounded assumptions; (3) Whether IDS's Typical Negotiation Adjustments are inappropriate, nonitemized, unverified, and unexplained; and (4) Whether IDS's use of Typical Negotiation Adjustments in calculating the actual cash value on a total loss claim breached its contract with its insureds.

**C.  The Claims of Plaintiffs Are Typical of the Claims of the Settlement Class.**

"[R]epresentative claims are typical if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020. "Typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought." *Hanon v. Dataprods. Corp*., 976 F.2d

497, 508 (9th Cir. 1992). Here, Plaintiffs' claims are based on IDS's systematic use of Typical Negotiation and Negative Condition Adjustments in Audatex valuation reports to decrease the actual cash value of insureds' total loss claims. Moreover, Plaintiffs' and the Settlement Class's claims are based on the same legal theories. Because Plaintiffs' claims arise from the same course of conduct that affected all Settlement Class members and are based on the same legal theories as the claims of all Settlement Class members, typicality is satisfied.

### D.  Plaintiffs and Class Counsel Will Fairly and Adequately Represent the Interests of the Settlement Class.

Adequacy requires the representative of a class to provide fair and adequate representation of the class. Fed. R. Civ. P. 23(a)(4). "To determine whether named plaintiffs will adequately represent a class, courts must resolve two questions: '(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011) (quoting *Hanlon*, 150 F.3d at 1020).

Here, Plaintiffs have retained counsel with significant expertise in complex civil and insurance litigation. More specifically, the law firm of Nelson Boyd PLLC is intimately familiar with Washington insurance law, regularly representing its clients on wide-ranging insurance-related matters. *See* Bates Declaration at ¶ 7 and Exhibit 2. In addition, the law firm of Carney Bates & Pulliam, PLLC is a nationally recognized law firm in the field of complex class action litigation, also having experience in insurance-related matters, including the valuation and adjustment of insureds' total loss claims. *Id.* at ¶¶ 2-6 and Exhibit 1. Both firms are well-capitalized, allowing them to dedicate considerable resources to the fullest extent necessary to achieve the best possible result for class members. Thus, Class Counsel are unquestionably qualified to undertake this litigation.

-21-

1   Moreover, Plaintiffs and the Settlement Class desire the same outcome of this litigation,

2   namely to cease the Defendant's use of improper Typical Negotiation and Negative Condition

3   Adjustments and retrieve the largest possible monetary recovery from the Defendant. Thus,

4   Plaintiffs' claims coincide identically with the claims of the Settlement Class. Additionally,

5   because of this, Plaintiffs have vigorously prosecuted this case for the benefit of all members of

6   the Settlement Class. Further, there is no conflict or any antagonism between Plaintiffs and the

7   Settlement Class. Consequently, Plaintiffs satisfy the adequacy requirement.

8       **E. The Common Questions of Law and Fact in this Action Predominate Over Any**
        **Individual Issues and a Class Action Is the Superior and Most Efficient Means**
9       **to Adjudicate the Claims.**

10      In accordance with Rule 23(b), certification is appropriate when common questions of

11  law or fact predominate over individual questions and a class action is superior to other available

12  means of adjudication. *See* Fed. R. Civ. P. 23(b)(3). These requirements are satisfied in this case.

13      1.   Common Questions of Law and Fact Predominate.

14      In analyzing the predominance factor, the United States Supreme Court has defined this

15  inquiry as establishing "whether proposed classes are sufficiently cohesive to warrant

16  adjudication by representation." *Amchem Products Inc. v. Windsor*, 521 U.S. 591, 622 (1997). In

17  this regard, the predominance inquiry "focuses on the relationship between the common and

18  individual issues. When common questions present a significant aspect of the case and they can

19  be resolved for all members of the class in a single adjudication, there is clear justification for

20  handling the dispute on a representative rather than on an individual basis." *Hanlon*, 150 F.3d at

21  1022 (citations and quotations omitted); *see also In re Prudential Ins. Co. of Am. Sales Practice*

22  *Litig.*, 148 F.3d 283, 314-15 (3d Cir. 1998) (affirming the certification of a nationwide consumer

23  fraud class).

Common questions of law and fact predominate here because the central liability questions in this case — whether IDS's Typical Negotiation Adjustments are improper and whether IDS breached its form contract with insureds — can be resolved for all Settlement Class Members through generalized evidence.

2.    A Class Action is the Superior Method of Adjudicating this Case.

As explained in *Amchem*, "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . .for the proposal is that there be no trial." *Amchem*, 521 U.S. at 620. Thus, any manageability problems that may have existed in this case are eliminated by the proposed Settlement.

## VIII.    CONCLUSION

For all the foregoing reasons, Plaintiffs respectfully request that the Court enter an order, substantially in the form of the proposed Preliminary Approval Order:  (i) conditionally certifying the Settlement Class; (ii) preliminarily approving the proposed Settlement as fair, reasonable, and adequate; (iii) approving the form and manner of notice and directing that notice of the proposed Settlement be given to members of the Settlement Class; and (iv) scheduling a hearing before the Court to determine whether the Settlement should be finally approved.

Dated: December 11, 2020

**CARNEY BATES & PULLIAM, PLLC**
*/s/ Hank Bates*
Hank Bates (pro hac vice)
Tiffany Oldham (pro hac vice)
519 W. 7th St.
Little Rock, AR, 72201
Tel. 501-312-8500
Fax 501-312-8505
hbates@cbplaw.com
toldham@cbplaw.com

-23-

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

-And-

**NELSON BOYD, PLLC**

*/s/ Deborah M. Nelson*
Deborah M. Nelson, WSBA #23087
Jeffrey D. Boyd, WSBA #41620
411 University St., Suite #1200
Seattle, WA 98101
Tel. 206-971-7601
nelson@nelsonboydlaw.com
boyd@nelsonboydlaw.com

*Counsel for Plaintiffs and the Proposed Class*

-24-

1

**CERTIFICATE OF SERVICE**

2          I, the undersigned, hereby certify that on December 11, 2020, a copy of the foregoing was

3    electronically filed with the Clerk of Court using CM/ECF, which will send electronic

4    notification to the parties and registered attorneys of record that the document has been filed and

5    is available for viewing and downloading.

6

7                              _/s/ Hank Bates_____
                               Hank Bates

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT
AND INCORPORATED MEMORANDUM OF LAW IN SUPPORT
CASE NO. 3:19-CV-06235-MLP