The Honorable Michelle L. Peterson

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| **MAKENZIE and ERIC ZUERN, on behalf of themselves and all others similarly situated,**<br><br>**Plaintiffs,**<br><br>**vs.**<br><br>**IDS PROPERTY CASUALTY INSURANCE COMPANY, a foreign insurer; AMERIPRISE INS. CO., a foreign insurer; and AMERIPRISE AUTO & HOME INS., a foreign insurer,**<br><br>**Defendants.** | **Case No.: 3:19-CV-06235-MLP**<br><br>**MOTION FOR FINAL APPROVAL OF SETTLEMENT AND INCORPORATED MEMORANDUM OF LAW IN SUPPORT**<br><br>NOTE ON MOTION CALENDAR: May 26, 2021<br><br>ORAL ARGUMENT REQUESTED |

# TABLE OF CONTENTS

I. INTRODUCTION .................................................................................. 1

II. SUMMARY OF THE PROCEEDINGS ........................................ 3

III. SUMMARY OF THE SETTLEMENT ........................................ 7

    A. Settlement Benefits ............................................................. 7

    B. Notice to Settlement Class Members ................................. 9

    C. Plaintiffs' Request for (i) Attorneys' Fees and Litigation Costs and (ii) Service Awards .................................................................. 10

IV. APPLICABLE LEGAL STANDARDS ...................................... 10

V. THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE, WARRANTING FINAL APPROVAL .............................................................. 12

    A. Plaintiffs and Class Counsel Have Adequately Represented the Class, Obtaining an Exceptional Settlement to Which No Class Member or Governmental Entities Have Objected .............................................. 12

    B. The Settlement Was the Result of Informed, Arm's Length Negotiations Between the Parties and Has No Obvious Deficiencies ................. 13

    C. The Settlement Provides Exceptional Relief for the Class ............. 15

        1. Continued litigation would be risky, complex, lengthy, and expensive ................................................................ 16

        2. The Settlement provides meaningful, automatic payments to Settlement Class Members ................................................. 17

        3. The requested attorneys' fees are reasonable and in line with similar awards approved in the Ninth Circuit ....................... 18

        4. The Settlement provides for a non-reversionary common fund ............. 19

    D. The Settlement Treats All Class Members Equitably ....................... 19

    E. The Notice Program Satisfies Rule 23 and Due Process, and Constitutes The Best Notice Practicable ............................................... 19

MOTION FOR FINAL APPROVAL OF SETTLEMENT
AND INCORPORATED MEMORANDUM OF LAW IN SUPPORT
CASE NO. 3:19-CV-06235-MLP

VI.   FINAL CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE...... 20

VII.  CONCLUSION .......................................................................................... 21

# TABLE OF AUTHORITIES

**Cases**                                                                                                    **Page(s)**

*Churchill Village, L.L.C. v. General Elec.*,
    361 F.3d 566 (9th Cir. 2004) ................................................................................. 11, 16

*Craft v. Cnty. of San Bernardino*,
    624 F. Supp. 2d 1113 (C.D. Cal. 2008) ............................................................ 18

*Deaver v. Compass Bank*,
    No. 13-CV-00222-JSC, 2015 WL 4999953 (N.D. Cal. Aug. 21, 2015) ................ 14, 15

*Dunakin v. Quigley*,
    No. 2:14-CV-00567-JLR, 2017 WL 123011 (W.D. Wash. Jan. 10, 2017) ............. 13, 14

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011, 1027 (9th Cir. 1998) ............................................................ 14

*Hendricks v. Starkist Co.*,
    No. 13-CV-00729-HSG, 2015 WL 4498083 (N.D. Cal. July 23, 2015) ...................... 19

*Hughes v. Microsoft Corp.*,
    No. C98-1646C, 2001 WL 34089697 (W.D. Wash. 2001) .................................... 11, 14

*In re Apple Computer Sec. Litig.*,
    No. C-84-20148-(A)-JW, 1991 WL 238298 (N.D. Cal. Sept. 6, 1991) ...................... 17

*In re Bluetooth Headset Prods. Liab. Litig.*,
    654 F.3d 935 (9th Cir. 2011) .................................................... 10, 11, 15, 18

*In re Mego Fin. Corp. Sec. Litig.*,
    213 F.3d 454 (9th Cir. 2000) ........................................................................... 12

*In re Michael Milken & Assocs. Sec. Litig.*,
    150 F.R.D. 46 (S.D.N.Y. 1993) .......................................................................... 16

*In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*,
    227 F.R.D. 553 (W.D. Wash 2004) .................................................................... 14

*In re Warner Comm. Sec. Litig.*,
    618 F. Supp. 735 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986) ........................ 16

*Kautsman v. Carrington Mortg. Servs. LLC*,
    No. C16-1940-JCC, 2020 WL 7016051 (W.D. Wash. June 2, 2020) ........................ 14

-iv-

*Noll v. eBay, Inc.*,
 309 F.R.D. 593 (N.D. Cal. 2015) ................................................. 16

*Pelletz v. Weyerhaeuser Co.*,
 255 F.R.D. 537 (W.D. Wash. 2009) ............................................ 13

*Stanger v. China Elec. Motor, Inc.*,
 812 F.3d 734 (9th Cir. 2016) ............................................ 10 n.3, 15

*Steiner v. Am. Broad. Co.*,
 248 Fed. Appx. 780 (9th Cir. 2007) ............................................ 18

*Strougo v. Bassini*,
 258 F. Supp. 2d 254 (S.D.N.Y. 2003) ........................................ 16

*Villegas v. J.P. Morgan Chase & Co.*,
 No. cv 09-00261, 2012 WL 5878390 (N.D. Cal. Nov. 21, 2012) ................. 14

*West Virginia v. Chas. Pfizer & Co.*,
 314 F. Supp. 710 (S.D.N.Y. 1970), *aff'd*, 440 F.2d 1079 (2d Cir. 1971) ............... 16, 17

*Wilson v. Playtika Ltd.*,
 No. 18-CV-5277-RSL, 2021 WL 512230 (W.D. Wash. Feb. 11, 2021) ...................... 18

**Statutes**

28 U.S.C. § 1715 ............................................................. 13

Wash. Admin. Code § 284-30-391 ............................................ 4, 5 n.1

**Other Authorities**

Fed. R. Civ. P. 23(e) ....................................................... 10, 21

Fed. R. Civ. P. 23(e)(2) .................................................... 11, 16

Fed. R. Civ. P. 23(e)(3) .................................................... 11, 16

MANAGING CLASS ACTION LITIGATION: A POCKET GUIDE FOR JUDGES (3d ed. 2010) ....................................................................... 19

Plaintiffs Makenzie and Eric Zuern ("Plaintiffs" or "Class Representatives"), by and through undersigned counsel and pursuant to the Stipulation and Agreement of Settlement, dated December 11, 2020 (ECF No. 49-1) (the "Settlement Agreement"), and this Court's Preliminary Approval Order, dated February 25, 2021 (ECF No. 54) (the "Preliminary Approval Order"), hereby request that the Court grant final approval of the settlement (the "Settlement") of the above-referenced action (the "Action"). More specifically, Plaintiffs respectfully request this Court enter an order, in substantial form to the proposed order attached as Exhibit 3 to the Settlement Agreement, (i) granting final approval of the Settlement as fair, reasonable, and adequate; (ii) granting final certification to the Settlement Class; and (iii) finding that the notice program as set forth in Section 5 of the Settlement Agreement and effectuated pursuant to the Preliminary Approval Order satisfies the requirements of Federal Rule of Civil Procedure 23(c) and due process and constitutes the best notice practicable under the circumstances. Plaintiffs further request this Court enter final judgment, in substantial form to the proposed order attached to the Settlement Agreement as Exhibit 4.

## I.    INTRODUCTION.

Pursuant to Federal Rule of Civil Procedure 23 ("Rule 23") and the Court's Preliminary Approval Order (defined below), Plaintiffs respectfully request that the Court grant final approval of the Settlement reached between Plaintiffs and Defendant IDS Property and Casualty Insurance Company n/k/a American Family Connect Property and Casualty Insurance Company ("IDS" or "Defendant") (collectively with Plaintiffs, the "Parties").

Plaintiffs firmly believe that the Settlement is in the best interest of the Settlement Class and clearly satisfies the standard of approval as discussed herein. Plaintiffs and Class Counsel have adequately represented the Class, obtaining an exceptional Settlement to which no class

-1-

member or governmental entities have objected. The Settlement is the product of arm's-length negotiations by experienced and informed counsel with a firm understanding of the strengths and weaknesses of their clients' respective claims and defenses, and it was reached only after intensive litigation, discovery, and arm's length negotiations, including two full-day mediation sessions.

The Settlement provides for a common fund of $1,750,000 (the "Settlement Fund") for the benefit of Settlement Class Members, with no reverter. This common fund represents 76% of the total amount ($2,288,832) in negative adjustments that Plaintiffs allege were improperly applied by Defendant when determining the actual cash value of Settlement Class Members' totaled vehicles. There is no claims process; instead, each Settlement Class Member who does not opt out will automatically receive a check. Unclaimed funds will be distributed *pro rata* in a secondary distribution to those who participated in the initial distribution. Thereafter, any residual funds will be disbursed to the Legal Foundation of Washington as a *cy pres* award.

Consistent with the "benchmark" in the Ninth Circuit precedent, Class Counsel is requesting attorney's fees equal to 25% of the Settlement Fund, as well as $15,375.44 in reimbursement of litigation expenses. Also, consistent with Ninth Circuit precedent, Plaintiffs request $2,500 each in service awards. Settlement administrative costs are estimated not to exceed $40,000, which is only 2% of the Settlement Fund.

Class Counsel believe that this is an excellent result for the Settlement Class, especially when weighed against the costs, risks, and delay of continued litigation, trial, and appeal. Moreover, the Court-approved notice program has been fully implemented, with an estimated notice reach of 98%, which is at the high-end of the range endorsed by the Federal Judicial Center. *See* Declaration of Rust Consulting, Inc. Regarding Notification to the Class ("Rust

Decl.") at ¶ 11. And, to date, no objections have been received and only one request for exclusion has been received. *See id*. at ¶¶ 12, 13; *see also* Declaration of Hank Bates ("Bates Decl.") at ¶ 7.

Accordingly, Plaintiffs respectfully submit that the Settlement satisfies all criteria for final approval, and specifically request this Court: (i) grant final approval of the Settlement as fair, reasonable, and adequate; (ii) grant final certification to the Settlement Class; (iii) find that the notice program as set forth in Section 5 of the Settlement Agreement and effectuated pursuant to the Preliminary Approval Order satisfies the requirements of Federal Rule of Civil Procedure 23(c) and due process and constitutes the best notice practicable under the circumstances; and (iv) enter final judgment.

## II.     SUMMARY OF THE PROCEEDINGS.

On October 25, 2019, Plaintiffs, on behalf of themselves and all others similarly situated, filed a Class Action Complaint (the "Complaint") in the Superior Court of the State of Washington, Pierce County, against IDS, Ameriprise Ins. Co. ("Ameriprise Ins."), and Ameriprise Auto & Home Ins. ("Ameriprise Auto & Home") (Ameriprise Ins. and Ameriprise Auto & Home are collectively referred to as the "Ameriprise Defendants"), which was subsequently removed to this Court. The Complaint asserts four claims: (1) breach of contract; (2) breach of the covenant of good faith and fair dealing; (3) violation of the Consumer Protection Act; and (4) declaratory judgment. More specifically, Plaintiffs allege that the subject insurance contracts in this case provide coverage for the total loss of a vehicle on the basis of "actual cash value" of the vehicle, and IDS and the Ameriprise Defendants breached those contracts and Washington law by not paying total loss claims upon the "actual cash value" of loss vehicles. Plaintiffs further allege that IDS and the Ameriprise Defendants departed from the use of "actual

cash value" by basing their valuations and claims payments on the values of comparable vehicles that had been artificially reduced by a "typical negotiation" deduction (the "Typical Negotiation Adjustment") that was nonitemized, unverified, unexplained, and that lacked a foundation in market realities. Plaintiffs aver that IDS employed a routine total loss settlement process that involved obtaining a market valuation report from Audatex North America, Inc. ("Audatex"). These market valuation reports reduced the estimated value to comparable vehicles by applying improper adjustments, such as the Typical Negotiation Adjustment.

Plaintiffs allege that these downward adjustments are improper for two, interrelated reasons. First, Wash. Admin. Code ("WAC") § 284-30-391(4)(b) and (5)(d) require that any allowable adjustments to a vehicle's actual cash value be measurable, justified, and fully explained to insureds so that insureds have the ability to evaluate and challenge them. However, IDS provided no measurable justification or explanation for their "typical negotiation" adjustment or even any disclosure that such an analysis was actually completed prior to applying the adjustment. Second, the Typical Negotiation Adjustment is arbitrary and contrary to auto pricing and inventory management in the used vehicle marketplace.

In their Motion to Dismiss filed on January 21, 2020 (ECF No. 16), IDS and the Ameriprise Defendants argued for dismissal of Plaintiffs' Complaint in its entirety upon the following grounds: (1) IDS did not breach the insurance policy or Washington law when it applied the "typical negotiation" adjustment; (2) Plaintiffs' claims fail because they did not allege sufficient facts to show they were damaged; and (3) Plaintiff failed to allege any cognizable facts about the Ameriprise Defendants.

On May 4, 2020, the Court entered an order denying in part and granting in part the Motion to Dismiss (ECF No. 36). Specifically, the Court sustained all claims against IDS on

-4-

Plaintiffs' theory that IDS had applied a deduction in violation of the disclosure provisions of WAC § 284-30-391;[1] held that Plaintiffs sufficiently alleged damages in an amount equal to the Typical Negotiation Adjustment or deduction that IDS applied; and dismissed Plaintiffs' claims, without prejudice, against the Ameriprise Defendants.

During the pendency of the Motion to Dismiss and thereafter, the Parties engaged in extensive written discovery, as well as third-party discovery with Audatex and the industry's other two leading valuation companies: CCC Information Services, Inc. (which IDS now uses) and Mitchell International, Inc. This discovery included extensive data from both Defendant and Audatex identifying all 2,811 relevant claim files, the dollar amounts of the Typical Negotiation Adjustments and Negative Condition Adjustments for each claim file and other information material to identification of class members, date of injury, calculation of damages and contact information for notice.

In addition, Plaintiffs deposed Karen Brunner, the claims adjuster for Plaintiffs' claim, and Jodi Helf, a senior claims adjuster identified by Defendant as having knowledge of the handling of IDS's policies and procedures for handling claims, as well as Audatex's valuation reports and the amount that IDS paid Plaintiffs pursuant to their policy. Ms. Helf was also scheduled to give a Rule 30(b)(6) deposition, but upon agreement of the Parties and Court approval, further depositions and class certification briefing were stayed pending mediation.

On August 11, 2020, the Parties engaged in a full-day mediation session before well-respected mediator Stew Cogan. While the Parties made significant strides with the assistance of Mr. Cogan, they were unable to reach a mutually acceptable resolution to this case. The Parties

---

[1] The Court rejected Plaintiffs' alternative theory for breach of contract, *i.e.*, that WAC § 284-30-391 provides an exclusive list of deductions when determining the value of a comparable vehicle, and a typical negotiation adjustment is not a permitted deduction.

agreed to continue settlement talks thereafter. With the assistance of Mr. Cogan and after further exchange of confidential information related to class size and damages, the Parties agreed to a second mediation session. After a second full-day mediation session with Mr. Cogan on September 25, 2020, the Parties reached mutually-agreeable terms of settlement, which they transcribed into a Memorandum of Understanding. On October 5, 2020, the Parties informed this Court that they had reached an agreement in principle on key settlement terms and structure (ECF No. 45), and on October 6, 2020, this Court stayed the litigation for a period through and including November 20, 2020 to provide time for the parties to finalize the settlement terms (ECF No. 46). Thereafter, the Parties worked cooperatively together to use the Memorandum of Understanding to draft a comprehensive Settlement Agreement and exhibits thereto. On November 20, 2020, the Parties filed a Joint Stipulation asking for the stay to be extended for a period through and including December 11, 2020 to allow the Parties to finalize these documents (ECF No. 47), which was granted by the Court on November 23, 2020 (ECF No. 48).

On December 11, 2020, the Parties executed the Settlement Agreement. Thereafter, Plaintiffs contemporaneously filed a Motion for Preliminary Approval of Settlement and Incorporated Memorandum of Law in Support (ECF No. 49) and the executed Settlement Agreement (ECF No. 49-1).

On February 25, 2021, this Court entered an order granting preliminary approval to the Settlement and approving the form and manner of notice provided therein (the "Preliminary Approval Order"). *See* ECF No. 54.

III.  **SUMMARY OF THE SETTLEMENT.**

A.  **Settlement Benefits.**

Defendant has agreed to establish a non-reversionary, cash settlement fund of $1,750,000.00 (the "Settlement Fund") for the benefit of Settlement Class Members. In accord with paragraph 1.18 of the Settlement Agreement, the Settlement Class includes:

> All persons insured by a contract of automobile insurance issued by IDS to a Washington resident, and who, from October 25, 2013 through the date of the order granting preliminary approval, received compensation for the total loss of their vehicles under their First Party Coverages (Comprehensive, Collision, and UIM) and received a total loss valuation from IDS based upon an Audatex valuation.

Unless a Settlement Class Member submits a valid and timely Request for Exclusion (*see* paragraphs 6.1-6.3 of the Settlement Agreement), he or she will automatically receive, for each of his or her claims, a *pro rata* distribution from the Settlement Fund less any court-approved attorneys' fees and costs, service award, and all costs of notice and settlement administration (the "Distributable Settlement Amount"). Settlement Agreement at ¶ 3.2. The *pro rata* distribution to be paid for each claim will be calculated using the following calculations. First, the *pro rata* ratio will be calculated by dividing the Distributable Settlement Amount by the sum of all Typical Negotiation Adjustments and downward adjustments for vehicle condition ("Negative Condition Adjustments") applied to all claims of all Settlement Class Members. Then, the *pro rata* distribution to be paid for each individual claim will be calculated by multiplying that *pro rata* ratio by the sum of the Typical Negotiation Adjustment and any Negative Condition Adjustment applied to that individual claim. *Id.*

Based on records obtained from Defendant and Audatex, the sum of all challenged Typical Negotiation and Negative Condition Adjustments applied to all Settlement Class Members is $2,288,832. *See* ECF No. 50 at ¶ 9. The Settlement Fund of $1,750,000 represents

roughly 76% of that sum. *Id*. Class Counsel is requesting an award of attorneys' fees of 25% of the Settlement Fund, or $437,500, and reimbursement of out-of-pocket litigation costs of $15,375.44. Settlement Agreement at ¶ 7.1; Bates Decl. at ¶¶ 10, 33. The requested service awards for the Class Representatives will not exceed a total of $5,000 ($2,500 each). *Id.* at ¶ 34. Based on estimated administrative costs of approximately $40,000, the Distributable Settlement Amount is estimated to be at least $1,250,500, resulting in a *pro rata* ratio of at least 54.6%. *See* ECF No. 50 at ¶ 16. In other words, Settlement Class members are estimated to receive for each claim a check for an amount equal to, or greater than, 54.6% of the sum of the Typical Negotiation Adjustment and any Negative Condition Adjustment applied to their claim.

No funds from the Settlement will revert to Defendant. For any unclaimed money or uncashed checks remaining in the Distributable Settlement Amount after the first distribution (in other words, any checks that remain uncashed more than 121 days after they were mailed to Settlement Class Members), a second distribution will be made to Settlement Class Members that cashed their initial checks if economically feasible. If any funds remain in the Settlement Fund, after payment of all approved and/or awarded attorney's fees and costs, expenses, and service awards and the initial and secondary distribution, then said funds will be disbursed to the Legal Foundation of Washington as a *cy pres* award. *See* Settlement Agreement at ¶ 3.7.

In exchange for the consideration from the Defendant, the Action will be dismissed with prejudice upon final approval of the Settlement, and the Settlement Class Members will thereby release all claims against IDS and the Released Parties through the date that the Court entered the Preliminary Approval Order, relating to claims handling of automobile total loss claims using valuation reports provided by Audatex. *See* Settlement Agreement at ¶¶ 1.14-1.16, 9.1-9.2.

Released Claims do not include claims unrelated to automobile total losses including claims for bodily injury, personal injury protection, and/or medical payment coverage. *Id.*

**B. <u>Notice to Settlement Class Members.</u>**

In accord with paragraphs 5.1–5.8 of the Settlement Agreement and the Court's Preliminary Approval Order, notice to Settlement Class Members was made by (i) mailing, by first-class US mail, the Notice (substantially in the form attached as Exhibit 2 to the Settlement Agreement); and (ii) emailing the Notice to those Settlement Class Members for whom an email address is available in Defendant's records and was made available as part of the claims process.[2] *See* Rust Decl. at ¶ 6. Skip tracing was performed by the Settlement Administrator for all returned mail. *Id.* at ¶ 10. To the extent it was reasonably able to locate a more-current mailing address using skip tracing, the Settlement Administrator re-mailed the returned Notice to the particular Settlement Class Member by first-class US mail. *Id.* In addition, the Notice was posted on the Settlement Website, www.zuernsettlement.com. *Id.* at ¶ 4.

The Notice provided an estimate of the recovery amount that the Settlement Class Member will receive for each individual claim. *See* Rust Decl., Ex. A at p. 2. The Notice also included the following information: (1) a plain and concise description of the nature of the Action and the proposed Settlement; (2) the right of Settlement Class Members to request exclusion from, or object to, the Settlement; (3) specifics on the date, time and place of the Final Fairness Hearing; and (4) information regarding Class Counsel's anticipated fee application and the anticipated request for the Class Representatives' service award. *See* Rust Decl., Exs. A and B.

---

[2] Email addresses are available for approximately 98% of the Settlement Class Members identified in Defendant's records. *See* ECF No. 50 at ¶ 10.

Moreover, in accord with the Settlement Agreement and the Court's Preliminary Approval Order, the current motion, along with Plaintiffs' Motion for Award of Attorneys' Fees, Reimbursement of Litigation Costs, and Service Awards ("Plaintiffs' Motion for Attorneys' Fees"), will be posted on the Settlement Website.

All costs and fees related to the Notice are to be paid from the Settlement Fund.

### C. Plaintiffs' Request for (i) Attorneys' Fees and Litigation Costs and (ii) Service Awards.

In accord with the Settlement Agreement, Plaintiffs are requesting an award of attorneys' fees equal to 25% of the Settlement Fund,[3] or $437,500, to compensate Class Counsel for all of the work already performed in this case, all of the work remaining to be performed in connection with this Settlement, and the risks undertaken in prosecuting this case. *See* Plaintiffs' Motion for Attorneys' Fees. Plaintiffs are also seeking reimbursement of Class Counsel's out-of-pocket litigation costs in the amount of $15,375.44, as well as service awards for each Class Representative in an amount not to exceed $2,500 per Class Representative or $5,000 collectively. *Id.* The enforceability of the Settlement is not contingent on the Court's approval of Plaintiffs' Motion for Attorneys' Fees, and any award granted by the Court will be paid out of the Settlement Fund.

## IV. APPLICABLE LEGAL STANDARDS.

The approval process for a class action settlement takes place in three stages: preliminary approval, notice, and final approval. *See* Fed. R. Civ. P. 23(e); *see also In re Bluetooth Headset Prods. Liab. Litig.* ("*In re Bluetooth*"), 654 F.3d 935 (9th Cir. 2011). On February 25, 2021, this Court granted Plaintiffs' Motion for Preliminary Approval of Settlement and Incorporated

---

[3] "The Ninth Circuit has set 25% of the fund as a 'benchmark' award under the percentage-of-fund method." *Stanger v. China Elec. Motor, Inc.*, 812 F.3d 734, 738 (9th Cir. 2016).

Memorandum of Law in Support. ECF No. 49. In accord with the Court's Preliminary Approval Order, the Settlement Administrator timely and successfully completed the Court-approved notice plan. *See* Rust Decl. at ¶¶ 4-10. Now, the Court must determine whether the Settlement "taken as a whole is fair, reasonable, and adequate," warranting final approval. *In re Bluetooth*, 654 F.3d at 946. In determining whether a proposed settlement is fair, reasonable, and adequate, courts are to consider whether:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
> (i) the costs, risks, and delay of trial and appeal;
> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
> (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

FRCP 23(e)(2).

These factors are substantially similar to those adopted by both the Ninth Circuit and district courts in Washington. *See In re Bluetooth*, 654 F.3d at 946-47 ("[C]ourts generally must weigh '(1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement.'") (quoting *Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004)); *see also Hughes v. Microsoft Corp.*, No. C98-1646C, 2001 WL 34089697, at *6 (W.D. Wash. Mar. 26, 2001) (adopting the factors set forth by the Ninth Circuit in *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d

454 (9th Cir. 2000)).

Applying the venerable standards above, final approval should be granted because the Settlement and the notice program satisfy the requirements for final approval in all respects.

## V. THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE, WARRANTING FINAL APPROVAL.

### A. <u>Plaintiffs and Class Counsel Have Adequately Represented the Class, Obtaining an Exceptional Settlement to Which No Class Member or Governmental Entities Have Objected.</u>

Both Plaintiffs and Class Counsel have adequately represented the Class in this case. The Plaintiffs have adequately represented all Class Members in this action by achieving a Settlement that provides for roughly 76% of the sum of all challenged Typical Negotiation and Negative Condition Adjustments applied to all Settlement Class Members. In addition, Plaintiffs have been actively involved throughout the course of the litigation and settlement, assisting Class Counsel in investigating claims on an individual basis, reviewing case documents, remaining apprised of the litigation, and overseeing settlement negotiations. Moreover, Plaintiffs' efforts, including the risks they voluntarily took as well as the time they expended supporting the litigation, were crucial to achieving the exceptional result for the Settlement Class.[4]

Class Counsel have also fully and adequately represented all members of the Settlement Class. Class Counsel vigorously litigated this case including: (a) extensive pre-filing investigation; (b) drafting and filing the complaint; (c) successfully defending against Defendant's motion to dismiss; (d) completing document discovery; (e) taking the depositions of the key Defendant employees; (f) obtaining and reviewing extensive claims data from Defendant

---

[4] For their efforts, Plaintiffs are requesting a service award of $2,500 each, or $5,000 collectively. Plaintiffs' request is reasonable and in line with similar awards approved by this Court. *See* Plaintiffs' Motion for Attorneys' Fees at Section IV(D).

to ensure identification of all class members and the challenged adjustments included in their claims; (g) review of extensive data produced by Audatex related to the Class Members' total loss claims and calculation of actual cash value; and (h) ultimately successfully negotiating the Settlement now before the Court. Class Counsel's efforts demonstrate that they vigorously and zealously represented the Class. It is Class Counsel's informed opinion that this Settlement represents an exceptional result and is in the best interest of the Class. *See* Bates Decl. at ¶ 3; *see also Pelletz v. Weyerhaeuser Co.*, 255 F.R.D. 537, 543 (W.D. Wash. 2009) (where plaintiffs' attorneys are qualified and well informed, their opinion regarding settlement is entitled to significant weight).

Lastly, to date, no Settlement Class Member has objected to the Settlement. *See* Bates Decl. at ¶ 7; Rust Decl. at ¶ 13. And, while no governmental entity is a party to this litigation, notice was issued to the appropriate federal and state officials in accordance with the 28 U.S.C. § 1715, and to date, no governmental entity has raised an objection or concern about the Settlement. *See* Bates Decl. at ¶ 7. Accordingly, these factors weigh in favor of final approval.

### B. The Settlement Was the Result of Informed, Arm's Length Negotiations Between the Parties and Has No Obvious Deficiencies.

Courts recognize that arm's-length negotiations conducted by competent counsel are *prima facie* evidence of fair settlements. *Dunakin v. Quigley*, No. 2:14-CV-00567-JLR, 2017 WL 123011, at *2 (W.D. Wash. Jan. 10, 2017) ("A presumption of fairness and adequacy attaches to a class action settlement reached in arm's-length negotiations by experienced class counsel after meaningful discovery."). The Court's role is to ensure "the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998) (internal quotation omitted). Courts will approve class action

settlements entered into after good-faith, arm's-length negotiations. *See Kautsman v. Carrington Mortg. Servs. LLC*, No. C16-1940-JCC, 2020 WL 7016051, at *1-2 (W.D. Wash. June 2, 2020); *In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 227 F.R.D. 553, 567 (W.D. Wash 2004); *Hughes,* 2001 WL 34089697, at *7. Moreover, "[t]he use of a mediator and the presence of discovery 'support the conclusion that the Plaintiff was appropriately informed in negotiating a settlement.'" *Deaver v. Compass Bank*, No. 13-CV-00222-JSC, 2015 WL 4999953, at *4 (N.D. Cal. Aug. 21, 2015) (quoting *Villegas v. J.P. Morgan Chase & Co*., No. CV 09-00261 SBA (EMC), 2012 WL 5878390, at *6 (N.D. Cal. Nov. 21, 2012)); *see also Dunakin*, 2017 WL 123011, at *2 (concluding the settlement "was the result of arm's length bargaining" and "was reached in good faith with the assistance of a neutral mediator.").

Here, the Settlement was reached only after extensive factual investigation, motions practice, and fulsome discovery. Further, the Settlement was negotiated over the span of several weeks and two full-day mediation sessions before a well-respected mediator, Stew Cogan. During negotiations, counsel for the Defendant vigorously defended their client's position and demonstrated their commitment to litigate this Action to its conclusion. Hence, Class Counsel had a wealth of information at their disposal before entering into settlement negotiations, settlement negotiations were significant and included two lengthy mediations, and the Settlement represents concessions by both parties. Accordingly, the Settlement was only reached after hard-fought litigation and protracted negotiations conducted by informed, experienced counsel on both sides who were thoroughly familiar with the factual and legal issues. *See* Bates Decl. at ¶¶ 4, 5.

Additionally, there are no obvious deficiencies in the Settlement Agreement. *See In re Bluetooth*, 654 F.3d at 947; *Deaver*, 2015 WL 4999953, at *4. Settlement Class Members who do not exclude themselves will automatically receive for each of their claims a *pro rata*

-14-

distribution from the Settlement Fund less any court-approved attorneys' fees and costs, service awards, and costs of settlement notice and administration. Plaintiffs' request for attorneys' fees, litigation costs, and service awards are reasonable and directly in line with prevailing standards in the Ninth Circuit. *Stanger*, 812 F.3d at 738 ("The Ninth Circuit has set 25% of the fund as a 'benchmark' award under the percentage-of-fund method."); *see also* Bates Decl. at ¶¶ 22, 23. Furthermore, the Settlement provides for an initial and secondary distribution, with any remaining funds being disbursed to the Legal Foundation of Washington as a *cy pres* award. *See* Settlement Agreement at ¶ 3.7. Thus, there is no issue of reverter.

Additionally, the scope of the release is not overly broad as Settlement Class Members will release only those claims related to the handling of an automobile total loss claim adjudicated using valuation reports prepared or provided by Audatex. *Id*. at ¶¶ 1.14-1.16 and 9.1-9.2. The releases do not include claims unrelated to automobile total loss valuation including claims for bodily injury, personal injury protection, and/or medical payment coverage or claims where Defendant did not use valuation reports prepared by Audatex. *Id.*

In sum, the Settlement was achieved through arm's-length negotiations conducted by competent counsel, and contains no obvious deficiencies. Accordingly, there are no grounds to doubt the Settlement's fairness.

### C. __The Settlement Provides Exceptional Relief for the Class__.

When determining if the relief provided for the class is adequate, Rule 23 instructs this Court to take into account "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorneys' fees, including timing

of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2). Consideration of each of these sub-factors weighs in favor of final approval.

### 1. *Continued litigation would be risky, complex, lengthy, and expensive.*

While Plaintiffs have calculated the maximum value of their claims to be larger than the settlement amount, when the maximum value of Plaintiffs' and the Class's claims are discounted by the identifiable risks, experience dictates that the interests of the Class are better served by the proposed Settlement. *See Noll v. eBay, Inc.*, 309 F.R.D. 593, 606 (N.D. Cal. 2015) ("Immediate receipt of money through settlement, even if lower than what could potentially be achieved through ultimate success on the merits, has value to a class, especially when compared to risky and costly continued litigation."); *see also West Virginia v. Chas. Pfizer & Co.*, 314 F. Supp. 710, 743-44 (S.D.N.Y. 1970), *aff'd*, 440 F.2d 1079 (2d Cir. 1971) ("In considering the proposed compromise, it seems also to be of importance that (if approved) the substantial amounts of money are available for class members now, and not at some distant time in the future. The nature of these actions is such that a final judgment, assuming it to be favorable, could only be obtained after years of expensive litigation. It has been held proper 'to take the bird in hand instead of a prospective flock in the bush.'"); *In re Michael Milken & Assocs. Sec. Litig.*, 150 F.R.D. 46, 53 (S.D.N.Y. 1993) (noting that even a favorable jury verdict "is not a guarantee of ultimate success").

Here, the risks of continued litigation are substantial. Defendant has vigorously denied Plaintiffs' allegations of wrongdoing. *See Churchill Village*, 361 F.3d at 576; *Strougo v. Bassini*, 258 F. Supp. 2d 254, 259-60 (S.D.N.Y. 2003) (citing *In re Warner Comm. Sec. Litig.*, 618 F. Supp. 735, 744-45 (S.D.N.Y. 1985)), *aff'd*, 798 F.2d 35 (2d Cir. 1986)). Defendant filed a motion to dismiss early in this case, resulting in the dismissal of two named defendants. Plaintiffs

anticipate that IDS would likely have vigorously opposed class certification and moved for summary judgment if this case were to continue. Thus, continued litigation of the action would have been lengthy and expensive, and the possibility of Plaintiffs litigating this case on a class basis through judgment is uncertain.

Moreover, even if Plaintiffs were to prevail through continued litigation and trial, they still face significant risks as an appeal by IDS would be likely. "It is known from past experience that no matter how confident one may be of the outcome of litigation, such confidence is often misplaced." *West Virginia*, 314 F. Supp. at 743-44. For example, in *In re Apple Computer Sec. Litig.*, No. C-84-20148-(A)-JW, 1991 WL 238298 (N.D. Cal. Sept. 6, 1991), the jury rendered a verdict in favor of plaintiffs and found recoverable damages in excess of $100 million. Nonetheless, the trial court disagreed and overturned the verdict, entering a judgment notwithstanding the verdict for the individual defendants and ordering a new trial with regard to the corporate defendant. *Id.*

### 2. The Settlement provides meaningful, automatic payments to Settlement Class Members.

Under the Settlement, each Settlement Class Member is entitled to an automatic payment of his or her *pro rata* distribution **unless** he or she submits a timely request for exclusion. Settlement Agreement at ¶ 3.2. As such, the method to distribute relief is both simple and efficient.

Moreover, the relief provided to Settlement Class Members under the Settlement is exceptional. As previously noted, the Parties have determined, based upon Defendant's records, that Defendant applied a total of $2,288,832.00 in Typical Negotiation and Negative Condition Adjustments that Plaintiffs allege were improper. *See* ECF No. 50 at ¶ 9. As the Settlement creates a Settlement Fund of $1,750,000.00, this equates to roughly 76% of that sum. After

-17-

deduction for any court-approved attorneys' fees and expenses, service award, costs of notice and administration, the Distributable Settlement Amount is estimated to be at least $1,250,500 resulting in a *pro rata* ratio of at least 54.6%. Therefore, Class Counsel estimates that for each claim, each Settlement Class Member will receive a check for an amount equal to, or greater than, 54.6% of the sum of the Typical Negotiation Adjustment and any Negative Condition Adjustment applied to their claim. *See id*. at ¶ 16. Thus, the Settlement provides meaningful relief with no obligation that requires a Settlement Class Member to submit a claim form in order to receive benefits.

### 3. The requested attorneys' fees are reasonable and in line with similar awards approved in the Ninth Circuit.

As detailed in Plaintiff's Motion for Attorneys' Fees, Class Counsel requests a standard benchmark award of 25%, which is in line with similar awards approved in the Ninth Circuit. *In re Bluetooth*, 654 F.3d at 942-43; *Steiner v. Am. Broad. Co*., 248 Fed. Appx. 780, 783 (9th Cir. 2007) (upholding 25% fee award yielding multiplier of 6.85, finding that it "falls well within the range of multipliers that courts have allowed."); *Wilson v. Playtika Ltd.*, No. 18-CV-5277-RSL, 2021 WL 512230, at *2 (W.D. Wash. Feb. 11, 2021) (granting counsel's request for a fee award of 25% of the common fund, or $9,500,000); *Craft v. Cnty. of San Bernardino*, 624 F. Supp. 2d 1113, 1125 (C.D. Cal. 2008) (approving 25% fee award yielding a multiplier of 5.2 and stating that "there is ample authority for such awards resulting in multipliers in this range or higher."); *see also* Bates Decl. at ¶¶ 22, 23. Moreover, a lodestar crosscheck confirms the reasonableness of Class Counsel's request, which yields a modest multiplier of 1.006. *See* Plaintiffs' Motion for Attorneys' Fees at Section IV(B)(4); Bates Decl. at ¶¶ 24-27. Further, pursuant to the Settlement Agreement, Class Counsel will not receive any payment until twenty-eight (28) days after the

-18-

Effective Date. *See* Settlement Agreement at ¶¶ 1.5 and 7.2. Thus, the percentage requested and the timing of the payment also weigh in favor of final approval.

### 4. *The Settlement provides for a non-reversionary common fund.*

As noted above, there is no claims process; instead, each Settlement Class Member who does not opt out will automatically receive a check. Unclaimed funds will be distributed *pro rata* in a secondary distribution to those who participated in the initial distribution. Thereafter, any residual funds will be disbursed to the Legal Foundation of Washington as a *cy pres* award. No funds from the Settlement will revert to Defendant. Thus, consideration of each of these four subfactors weigh in favor of final approval.

### D. The Settlement Treats All Class Members Equitably.

Under the Settlement, there is no unfair or preferential treatment of any Settlement Class Member. *See Hendricks v. Starkist Co.*, No. 13-CV-00729-HSG, 2015 WL 4498083, at *6 (N.D. Cal. July 23, 2015). Payments to Settlement Class Members will be made on a *pro rata* basis: the *pro rata* distribution to be paid for each individual claim will be calculated by multiplying the same *pro rata* ratio (approximately 54.6 %) by the sum of any Typical Negotiation Adjustment and Negative Condition Adjustment applied to that individual claim. Settlement Agreement at ¶ 3.2. Thus, each Settlement Class Member is given fair and equal treatment.

### E. The Notice Program Satisfies Rule 23 and Due Process, and Constitutes The Best Notice Practicable.

The Court has already determined that the notice program in this case satisfies Rule 23, and due process. ECF No. 54 at pp. 9-10. The Settlement Administrator has now fully implemented the notice program, providing an estimated 98% of Settlement Class Members with notice- exceeding the range endorsed by the Federal Judicial Center. *See* Rust Decl. at ¶ 11; *see also* MANAGING CLASS ACTION LITIGATION: A POCKET GUIDE FOR JUDGES, p. 27

(3d ed. 2010) (the norm is in the 70-95% range). Further, to date, there has been only one request for exclusion, and no objections. *See* Bates Decl. at ¶ 7; Rust Decl. at ¶¶ 12, 13. What is more, the Settlement Administrator continues to maintain the Settlement Website and toll-free phone line and respond to inquiries from Class Members. Accordingly, the notice provided to Settlement Class Members fulfills all of the requirements of Rule 23 and due process and constitutes the best notice practicable under the circumstances.

## VI.  FINAL CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE.

In its Preliminary Approval Order, the Court provisionally certified the Settlement Class upon concluding all of the requirements of Rule 23(a) and (b)(3) were satisfied. Specifically, the Court found as follows:  (1) the proposed Settlement Class is sufficiently numerous as it "consists of over 2,800 totaled loss vehicle claims" (ECF No. 54 at p. 5); (2) "this matter raises issues of common law and fact that can be resolved with a class-wide resolution, and, accordingly, the commonality requirement is met" (*id*. at p. 6); (3) Plaintiffs satisfy typicality as "Plaintiffs' claims concern Defendant's use of Typical Negotiation and Negative Condition Adjustments in Audatex valuation reports, which are the same issues raised in the Settlement Class's claims" (*id*.); (4) adequacy is met as "there are no apparent conflicts between Plaintiffs, Plaintiffs' counsel, and the proposed Settlement Class," and "counsel for the parties have demonstrated vigorous prosecution of this matter through motions practice, discovery, and mediation, and have submitted declarations regarding their extensive experience with complex class action litigation and insurance-related matters" (*id*. at p. 7); and (5) "questions of law and fact common to the Settlement Class predominate over any questions affecting individual class members, and [ ] given the common issues, a class action is superior to other available methods for adjudication of this controversy" (*id*.). For these same reasons, this Court should grant final certification of

-20-

Motion for Final Approval of Settlement
and Incorporated Memorandum of Law in Support
Case No. 3:19-CV-06235-MLP

the Settlement Class for settlement purposes only.

## VII.     CONCLUSION

For all the foregoing reasons, Plaintiffs respectfully request that this Court enter an order, in substantial form to the proposed order attached as Exhibit 1: (i) granting final approval of the Settlement as fair, reasonable, and adequate; (ii) granting final certification to the Settlement Class; and (iii) finding that the notice program as set forth in Section 5 of the Settlement Agreement and effectuated pursuant to the Preliminary Approval Order satisfies the requirements of Federal Rule of Civil Procedure 23(e) and due process and constitutes the best notice practicable under the circumstances. Plaintiffs further request this Court enter final judgment, in substantial form to the proposed order attached as Exhibit 2.[5]

Dated: April 21, 2021

**NELSON BOYD, PLLC**

*/s/ Deborah M. Nelson*
Deborah M. Nelson, WSBA #23087
Jeffrey D. Boyd, WSBA #41620

-AND-

**CARNEY BATES & PULLIAM, PLLC**

Hank Bates (pro hac vice)
Tiffany Oldham (pro hac vice)
519 W. 7th St.
Little Rock, AR, 72201
Tel. 501-312-8500
Fax 501-312-8505
hbates@cbplaw.com
toldham@cbplaw.com

*Counsel for Plaintiffs and the Proposed Class*

---

[5] The proposed orders attached to this motion as Exhibits 1 and 2 are identical in form to the proposed orders attached as Exhibits 3 and 4 to the Settlement Agreement and filed with the Court on December 11, 2020. *See* ECF No. 49-1.

-21-

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that on April 21, 2021, a copy of the foregoing was electronically filed with the Clerk of Court using CM/ECF, which will send electronic notification to the parties and registered attorneys of record that the document has been filed and is available for viewing and downloading.

_/s/ Deborah M. Nelson_
Deborah M. Nelson